Alexander SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–880.

District of Columbia Court of Appeals.

Argued April 4, 2000.

Decided June 27, 2002.

Joseph A. Virgilio, Glendale, CA, appointed by the court, for appellant.

Mark J. Lesko, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary Patrice Brown, and Jeffrey M. Beatrice, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, STEADMAN and RUIZ, Associate Judges.

RUIZ, Associate Judge.

Alexander Smith's principal claim on appeal is that his conviction for aggravated assault should be reversed because the trial court's instruction to the jury constructively amended the indictment returned by the grand jury.[1] We hold that plain error review applies to claims of deprivation of the Fifth Amendment right to indictment by a grand jury where the claim has not been preserved in the trial court. On the record in this case, there was no plain error, and we affirm.

## I.

Appellant is the former husband of Betty Pearsall, with whom he fathered a son, Alexander (nicknamed "Els"). The son lives with his mother and Eddie Pearsall, the victim in this case, who is Ms. Pearsall's husband. On May 2, 1997, appellant showed up at the home of the Pearsalls unexpectedly as they returned home from the grocery store. Neither Mr. nor Ms. Pearsall had seen appellant in over a year, and he had not made arrangements to see his son. An argument between Ms. Pearsall and appellant ensued in which appellant accused Ms. Pearsall of improperly raising their son. Appellant demanded to help with the groceries and removed several bags of groceries from the car and entered the Pearsalls' apartment.

Once inside the apartment, appellant became increasingly upset, yelling loudly and informing Ms. Pearsall that he was there to pick up Els. Ms. Pearsall described appellant as being in an "outraged state." Ms. Pearsall informed appellant that Els was not going to leave with him and the Pearsalls asked appellant to leave because he was acting belligerently and smelled of alcohol. Appellant refused to leave and continued the argument, pointing his finger at Ms. Pearsall, pressing his finger against her face, and calling her a "bitch." After repeatedly asking appellant to leave, Ms. Pearsall threatened to call the police. When Mr. Pearsall attempted to persuade appellant to leave, he said in response, "I'll kill you, get out of my face, I'm not going anywhere. I will kill you." Appellant also told the Pearsalls that he had a gun and kept holding his hand behind his back as if he possessed a weapon, but neither of the Pearsalls ever saw a weapon.

1. The trial court also convicted Smith of two counts of threats, which Smith does not appeal.

Appellant continued to threaten and push the Pearsalls, at one point telling Mr. Pearsall that if he came outside, appellant would "knock him out" and "shoot him," and again motioned behind his back as if he had a weapon in the back of his pants. Ms. Pearsall then called the police and appellant left. Mr. Pearsall followed appellant outside, intending to inform appellant that he did not appreciate the threats appellant made against his family. Further argument ensued, with appellant trying to regain entry into the apartment and Mr. Pearsall refusing to let him in. Mr. Pearsall informed appellant that there was "no way" he was opening the door, to which appellant responded, "Are those your last words?"

At that point, appellant lunged toward Mr. Pearsall and struck him above the left eye "with all of his force." Mr. Pearsall testified that it felt like "a blunt force." A neighbor called Ms. Pearsall and told her to come outside, where she discovered her husband on the ground, unconscious and shaking, with blood coming out of his nose and the back of his head. When the police and an ambulance responded, Ms. Pearsall gave a description of appellant to the police, but did not tell the police about appellant's threats inside the apartment. Mr. Pearsall remained unconscious until he was placed in the ambulance and was taken to D.C. General Hospital, where he received five stitches in the back of his head and was treated for a broken jaw and cuts on his nose and head. He required subsequent treatment by a dentist, who wired his jaw shut for about six weeks. Mr. Pearsall was left with scars on his nose and upper left temple.

The defense called Rosia Griffin and Clara Gardner, appellant's mother. Appellant did not testify. Ms. Griffin testi-

fied that she went with appellant on May 2, 1997, to pick up his son. When the Pearsalls arrived about ten minutes later with Els, Ms. Pearsall and appellant started "fussin'" about their son and discussed an evening on which Els returned home at two o'clock in the morning. Ms. Pearsall would not let Els leave with appellant, which upset appellant "a little bit." Ms. Griffin denied that appellant raised his voice or made any threats inside the apartment; she did not see any physical contact between appellant and Mr. Pearsall inside the apartment, nor did she see appellant reach behind his back or strike or push Ms. Pearsall.

Ms. Griffin and appellant left the apartment, and walked down the street. Ms. Griffin turned around and saw Mr. Pearsall come out of the apartment building and walk toward them, calling to appellant that he wanted to talk. According to Ms. Griffin, Mr. Pearsall pushed appellant, and appellant hit Mr. Pearsall once in the face. She testified that Mr. Pearsall fell against a gate in front of a doorway, hit his head on a pole, fell down some steps, and was knocked unconscious. Ms. Griffin testified that she did not see appellant drink that evening, nor did she see a gun, or hear him threaten to kill anyone.

Ms. Gardner testified that on May 2, 1997, she saw appellant for two hours in the afternoon, but she did not observe appellant drink any alcohol, nor did she smell alcohol on his breath. Appellant told her that he was going to call his son, and he made a phone call from her house.

## II.

On appeal, Smith claims that the trial court constructively amended Count Four of the indictment, which charged him with aggravated assault.[2] The indictment de-

**2.** The aggravated assault statute, D.C.Code   § 22–404.01 (2001), previously codified at

scribed the offense as "by any means knowingly and purposely caus[ing] serious bodily injury to Eddie Pearsall," reciting the language of one subsection of the aggravated assault statute, D.C.Code § 22–404.01(a)(1) (2001).[3] The court's instruction to the jury added a second means of committing the offense of aggravated assault: by "intentionally or knowingly engag[ing] in conduct that created a grave risk of serious bodily injury to Mr. Pearsall in which he manifested an extreme indifference to human life," which recited a different subsection of the aggravated assault statute, D.C.Code § 22–404.01(a)(2) (2001).[4] Citing *Hayward v. United States,* 612 A.2d 224 (D.C.1992), appellant claims that this was improperly done in order to conform the indictment to the government's proof at trial. In *Hayward,* we reversed a conviction for obstruction of justice where the trial court instructed the jury pursuant to a subsection of the obstruction of justice statute different from the subsection recited in the indictment, *see id.* at 226–27, because the effect of that discrepancy was to convict appellant "of an offense different from that charged in the indictment." *Id.* at 227. In *Hayward,* the government conceded that amendment of the indictment constituted reversible error. *See id.* at 226. Such is not the case here.

■ Smith's counsel did not seek to dismiss the case or object to the judge's instruction including the language of subsection (a)(2), on the ground that either the evidence presented at trial or the instruction constructively amended the indictment. Smith contends, however, that because a constructive amendment of the indictment is *per se* reversible error, *see Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *(Oliver) Johnson v. United States,* 613 A.2d 1381, 1384 (D.C. 1992), his conviction should be reversed notwithstanding his failure to object at trial.

■ Where constructive amendment to the indictment has not been objected to at the trial level, we have in the past applied plain error review, albeit without discussion of the specific argument appellant makes in this case. *See Woodall v. United*

---

D.C.Code § 22–504.1 (1996), provides:

(a) A person commits the offense of aggravated assault if:

(1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or

(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury.

3. Count Four of the indictment provided in full:

FOURTH COUNT:

On or about May 2, 1997, within the District of Columbia, Alexander Smith, did by any means, knowingly and purposely cause serious bodily injury to Eddie Pearsall. (Aggravated Assault, in violation of 22 D.C.Code, Section 504.1)

4. The complete jury instructions were as follows:

Now, Ladies and Gentlemen, the essential elements of the crime of aggravated assault, each of which the Government must prove beyond a reasonable doubt, are: First, that the Defendant, Alexander Smith, caused serious bodily injury to the complainant, Eddie Pearsall. And second, that the Defendant either intended to cause serious bodily injury to another person, or knew that serious bodily injury to another person would result from his conduct, or that the Defendant intentionally or knowingly engaged in conduct that created a grave risk of serious bodily injury to Mr. Pearsall, in which [he] manifested an extreme indifference to human life. Now, Ladies and Gentlemen, an act is done intentionally or knowingly if the Defendant acted consciously, deliberately, voluntarily, and not mistakenly, accidentally or inadvertently.

*States,* 684 A.2d 1258, 1262 (D.C.1996), *cert. denied,* 520 U.S. 1130, 117 S.Ct. 1278, 137 L.Ed.2d 354 (1997). In light of the Supreme Court's recent decision in *United States v. Cotton,* — U.S. —, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), we now hold that plain error review applies to a claim that an indictment has been constructively amended if an objection has not been made at the trial level. *See id.* at —, 122 S.Ct. at 1785–86. *See also (Joyce) Johnson v. United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (omitting constructive amendment cases from a list of cases that constitute reversible structural error). Moreover, as the Court held in *Cotton,* we also conclude that Smith cannot meet the strict final requirement of plain error, that the case "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at —, 122 S.Ct. at 1786 (quoting *(Joyce) Johnson,* 520 U.S. at 470, 117 S.Ct. 1544). Here, even if we assume that the evidence and instruction plainly amended the language of the indictment, there is no risk that the fairness, integrity or public reputation of judicial proceedings will be affected where the indictment included a citation that encompassed both subsections of the aggravated assault statute, and the

evidence amply supported appellant's conviction of aggravated assault. *See Woodall,* 684 A.2d at 1264–65.

 *Affirmed.*[5]

---

**5.** Smith makes two other claims on appeal, which we can dispose of briefly. First, he claims that the evidence was insufficient to support a finding that he possessed the requisite intent under D.C.Code § 22–404.01(a)(2), that is, that he did not "knowingly and purposely" engage in conduct that created a grave risk of serious bodily injury and manifested "an extreme indifference to human life." We need not decide the matter because, viewing the evidence in the light most favorable to the government, and allowing for the jury's right to weigh credibility and draw reasonable inferences, we conclude that there was sufficient evidence upon which the jury could find Smith guilty of aggravated assault under § 22–404.01(a)(1). *See Green v. United States,* 718 A.2d 1042, 1062 (D.C.1998), *cert. denied,* 526 U.S. 1011, 119 S.Ct. 1156, 143

L.Ed.2d 222 (1999) (conviction affirmed if evidence sufficient to support one of two alternative theories).

Smith's other claim is that the trial court erred in failing to give a unanimity instruction *sua sponte,* requiring the jury to vote unanimously on either of the two subsections before finding him guilty of aggravated assault. Under the circumstances of this case, where conviction for aggravated assault was based on a single incident and the statute permits conviction based on either of the two *mens rea* bases presented to the jury, we conclude there is no plain error. *See Parks v. United States,* 627 A.2d 1, 8–9 (D.C.1993) (citing *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion)).