Danny Lee JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CO–1143.

District of Columbia Court of Appeals.

Argued Jan. 31, 2001.

Decided Dec. 12, 2002.

Jon S. Pascale, appointed by the court, for appellant.

Susan A. Nellor, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Carolyn K. Kolben, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and WASHINGTON, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

This is an appeal from the denial of a motion to withdraw a guilty plea. Appel-lant was charged in a 41–count indictment with crimes committed on seven different dates between April and October 1994. He agreed to plead guilty to nine charges based on those seven incidents. Under the plea agreement, appellant pleaded guilty in March 1996 to three counts of second-degree burglary, two counts of robbery, one count of kidnapping, one count of attempted second-degree burglary, one count of first-degree burglary while armed, and one count of first-degree theft. A few weeks later, the court sentenced him to lengthy terms of imprisonment, including fifteen years to life for kidnapping and fifteen years to life for first-degree burglary while armed. All of the sentences were ordered to run consecutively, except for the first-degree theft sentence of thirty months to ten years, which was to be served concurrently with one of the other sentences.[1] Appellant noted an appeal from his conviction, which this court affirmed in an unpublished memorandum opinion and judgment. *Johnson v. United States,* No. 96–CO–815 (D.C. July 3, 1997).

In October 1998, more than two and a half years after the guilty plea, new counsel for appellant filed a motion to withdraw that plea, pursuant to Super. Ct.Crim. R. 32(e). The trial court[2] denied the motion after a hearing, and from that denial appellant has brought this appeal.

Appellant contends that the court erred in refusing to grant his motion to withdraw the guilty plea. He maintains that the judge who accepted his plea violated his rights under the Grand Jury Clause of the Fifth Amendment by allowing him to plead

---

**1.** With one exception (attempted second-degree burglary), the sentence for each offense was the statutory maximum, including the two sentences of fifteen years to life.

**2.** Because the judge who took the plea and imposed sentence had left the court in the interim to become a United States District Judge, the motion was assigned to a new judge who had no prior knowledge of the case.

guilty to three charges different from those contained in the indictment. Further, he argues that the government violated the plea agreement by failing to recommend a maximum sentence of fifteen to forty-five years' imprisonment. Finally, appellant claims that his counsel at the plea proceeding rendered ineffective assistance.

We agree that the government impermissibly amended one count of the indictment when it substituted a robbery charge for a charge of assault with intent to rob. We hold, however, that the court's acceptance of that amendment, to which appellant did not object, was not plain error. Finding no infirmity in the other eight convictions and no reason to set aside the otherwise valid plea agreement, we therefore leave undisturbed all nine of appellant's convictions.

I

A. *The Guilty Plea*

On the day that appellant's trial was set to begin, March 5, 1996, defense counsel advised the court that his client was interested in entering a plea of guilty to some of the charges. Following further discussion about the government's plea offer and the possible sentences, the court summarized the government's position: "So you're basically not—you're reserving allocution, making no promises on what you're going to be requesting?" The prosecutor replied, "Right."

The prosecutor then outlined a new plea offer under which appellant would plead guilty to nine offenses, as charged in nine of the forty-one counts of the indictment.[3] The court clarified the nine counts and stated the maximum and mandatory minimum sentences, as appropriate, for each offense. Yet again the court reminded defense counsel that there were "no promises on the part of the government about [the sentences'] being anything but consecutive to each other or consecutive to the Maryland sentence."[4] The prosecutor stated, however, that the government was prepared to withdraw the "life papers" that it had filed if appellant agreed to this new and final plea offer. After a short recess, defense counsel told the court that his client wished to accept the offer and plead guilty.

The court placed appellant under oath and began a thorough Rule 11 inquiry, during which the court made it very clear that every term of the plea agreement needed to be understood so that the matter could not be revisited at a later date. "[Y]ou can't come back in a day or two and say, hey, you know, I didn't understand it, I thought that this was involved or that was involved. This is it. This is your chance."

The court then asked the prosecutor to summarize the evidence relating to each of the nine counts that were the subject of the plea agreement. The court explained to appellant:

Now, those are the charges that you would be pleading to. And the govern-

---

**3.** The nine counts were as follows: three counts of second-degree burglary, for the incidents on March 31, April 6, and April 19, 1994 (counts 1, 5, and 8, respectively); attempted second-degree burglary for the incident on April 23, 1994 (count 11); kidnapping and assault with intent to commit robbery for the incident on August 9, 1994 (counts 14 and 18); first-degree burglary while armed for the incident on September 15, 1994 (count 25); and first-degree burglary (unarmed) and robbery (unarmed) for the incident on October 4, 1994 (counts 34 and 37).

**4.** At the time of the hearing, appellant was serving a prison term for an unrelated conviction in Maryland.

ment would ... dismiss the other counts in the indictment. They're reserving ... allocution ... which means reserving the right to make recommendations to the court as to what should happen to you at your sentencing. Your counsel can address the court as well, and you can. And the court makes an independent decision. But I want you to understand that they also can make recommendations as well.

Appellant repeatedly said that he understood the plea agreement and the reservation of allocution, and that he did not have any questions. For the most part, appellant either agreed with the government's proffered evidence or stated more facts that supported the charges. There were, however, two exceptions.

First, appellant disagreed with the proffer as it related to the charge of assault with intent to rob on August 9. He claimed that he "never touched anyone. I never called anyone no foul names or anything like [that]." Essentially, appellant admitted entering the home of Tyler Jugg and Kathleen Lavery, as well as kidnapping Ms. Lavery by tying her up (one of the charges included in the plea offer), but he denied assaulting Mr. Jugg. He did admit, however, that his accomplice, Jeffrey Long, wrestled with Mr. Jugg, and that when he (appellant) heard this scuffle, he assisted Mr. Long by tying up Ms. Lavery while Long tied up Jugg. Appellant then took an ATM card and $32 in cash from Jugg's wallet, along with some jewelry and other items from the house.[5]

While expressing some skepticism about appellant's account of the crime, the prosecutor proposed to amend the plea offer so that appellant would plead guilty to a charge of robbery of Mr. Jugg, rather than assault with intent to commit robbery. The court agreed that the charge could be changed to robbery because the penalty for that crime was the same as for assault with intent to commit robbery, i.e., at least two and not more than fifteen years' imprisonment, and because appellant's account of his role in the crime included all the elements of robbery. Appellant agreed to this change.

Appellant also challenged the government's plea offer of robbery and first-degree burglary stemming from the incident on October 4, 1994.[6] The indictment stated that appellant had entered the home of Stewart Newell, Susan Morris, and their daughter Kimberly Newell with the intent to steal. The prosecutor said that appellant bound and gagged Kimberly Newell and then stole $8,000 worth of property. He added that appellant demanded Ms. Newell's ATM card and personal identification number (PIN) and later withdrew $1,050 from her bank account. Appellant claimed, however, that his accomplice, Mr. Long, was the one who entered the home and obtained the ATM card and the PIN. Appellant's only role in the crime, he insisted, was in taking the ATM card and withdrawing the cash from the bank.

Faced with appellant's version of the facts, the court said:

> Well, let's be frank. We don't have ... enough to plead on this [burglary] count. So on neither one—I think it's too weak on the aider and abetter as a robbery, and I think certainly he doesn't have a burglary in the first degree. I mean he's not a lookout, he's nothing.

---

5. In the course of recounting his involvement in the events of August 9, appellant remarked that his accomplice, Jeffrey Long, was "deceased now because someone killed him."

6. First-degree burglary was charged in count 34 of the indictment; robbery was charged in count 37.

The prosecutor offered to amend the plea agreement so that Mr. Johnson could plead guilty to first-degree theft for stealing the money with the ATM card,[7] and to robbery as an aider and abettor of Long's robbery of the ATM card. After a fuller exposition of the events of October 4, the court concluded that the facts as agreed upon encompassed the elements of both first-degree theft and aiding and abetting a robbery. All parties were satisfied with this amendment to the plea agreement.

The court then thoroughly reviewed the plea offer with appellant and ensured that he understood the consequences of pleading guilty to these nine charges. The court also confirmed that appellant was satisfied with his legal representation and the plea offer, and that he was pleading guilty freely and without compulsion. Appellant then proceeded to plead guilty to the nine counts.

### B. *The Direct Appeal*

On direct appeal, appellant presented three claims of error. First, he contended that the kidnapping conviction should merge with the robbery conviction because they both arose from the same August 9 incident. Second, he argued that the sentences imposed by the trial court, which totaled fifty-six years to life, constituted cruel and unusual punishment in violation of the Eighth Amendment. Finally, he maintained that the court erred when it allowed some of the victims to make oral statements at the sentencing hearing about the impact the crimes had had on their lives. This court found all of these arguments without merit and affirmed all of the convictions in July 1997.

### C. *The Motion to Withdraw the Plea*

Almost a year and a half after that affirmance, new counsel for appellant filed a motion to withdraw his guilty plea, arguing that there was a "fatal defect" in the Rule 11 inquiry "because the court took part in discussions or communications regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to [her] of a plea agreement." Counsel also maintained that the guilty plea should be withdrawn because "justice demands withdrawal." Third, counsel asserted that after appellant had denied certain elements of some of the offenses, the court should have either started the trial or given him more time to discuss the evidentiary proffer with his attorney. Finally, new counsel claimed that trial counsel was ineffective because he had failed to ask for more time to discuss the plea offer and its ramifications with appellant.

At the hearing on the motion, appellant's trial counsel testified that he advised his client to accept the plea offer because the government had strong evidence against him for most of the forty-one counts and that, if he were convicted after a trial, his sentence could be "astronomical." Trial counsel further stated that he did not try to stop the plea proceedings when the charges were amended because the new charges carried either the same or a lesser penalty. Furthermore, appellant did not deny participating in any of the incidents underlying the charges, other than to dispute some of the details of his exact role in the crimes.

When the hearing resumed after a break, appellant testified that he agreed to the plea offer only after his trial counsel urged him to accept it by saying, "If you don't take this plea, they're going to give you life imprisonment without parole." He said he was confused by the different sentences that had been discussed in the plea

---

**7.** First-degree theft was charged in count 41 of the indictment.

negotiations and thought he would "get eight to twenty-four months."

The court found appellant's testimony "wholly unbelievable" and ruled that he had failed to show manifest injustice, as required by Rule 32(e) in a post-sentence motion to withdraw a guilty plea. The court also held that appellant's claim of a defective Rule 11 inquiry was procedurally barred because this argument had not been raised on direct appeal, when it could have been remedied. Moreover, the court ruled that in any event the judge who accepted the plea "took careful and considered measures to ensure that the plea to these very serious charges was going to be fully understood by Mr. Johnson," that the judge had "conducted a model Rule 11 inquiry," that there was "a factual basis for each of the pleas, and that [each plea] was voluntarily entered." Any suggestion that the judge "in some fashion coerced the plea" or "somehow ... took part in the discussions of the communications regarding the sentence to be imposed prior to the plea" was, the court ruled, "completely belied by the record" and without any "basis whatsoever."

Finally, the court held that appellant's claim of ineffective assistance of counsel did not meet either part of the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[8] The court concluded that appellant pleaded guilty "for his own reasons. And there was nothing in the taking of the plea vis-à-vis an alleged ineffective assistance of counsel that in any way causes me to question [counsel's] performance in representing his client."

## II

Rule 32 (e) of the Superior Court Rules of Criminal Procedure provides:

A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Since appellant moved to withdraw his guilty plea long after he was sentenced, his burden under the rule was to show "manifest injustice." Manifest injustice can take several forms. It can result, for example, from a fatal defect in the Rule 11 proceedings. *See Pettiford v. United States*, 700 A.2d 207, 216 (D.C.1997). We have also found manifest injustice when the government failed to comply with the terms of a plea agreement. *Gaston v. United States*, 535 A.2d 893, 897 (D.C.1988). Finally, we have declared that a defendant may withdraw a guilty plea if "justice demands withdrawal in the circumstances of the individual case." *Springs v. United States*, 614 A.2d 1, 3 (D.C.1992) (citation omitted); *see Maske v. United States*, 785 A.2d 687, 694 (D.C.2001) (outlining factors which "should be considered in determining whether 'justice demands withdrawal' "). In all cases, however, "we will reverse the denial of a motion to withdraw only upon a showing of abuse of discretion by the trial court." *Pierce v. United States*, 705 A.2d 1086, 1092 (D.C.1997) (citations omitted), *cert. denied*, 525 U.S. 1087, 119 S.Ct. 838, 142 L.Ed.2d 693 (1999).

---

**8.** Under *Strickland*, a convicted defendant claiming ineffective assistance must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See* 466 U.S. at 687, 104 S.Ct.

2052. The *Strickland* standard applies to claims of ineffective assistance of counsel in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

## A. Constructive Amendment

Appellant asserts that the trial court constructively amended the indictment by allowing him to plead guilty to three offenses that were not originally charged by the grand jury. According to appellant, the court should not have allowed him to plead guilty (1) as an aider and abettor of first-degree burglary rather than as a principal, (2) to first-degree theft as a substitute for first-degree burglary, and (3) to the robbery of Mr. Jugg instead of assault with intent to rob.

■ The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Thus it is a violation of the Fifth Amendment for a defendant to be convicted of an offense with which he has not been charged in the indictment or other charging document. *See Stirone v. United States,* 361 U.S. 212, 217–218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ingram v. United States,* 592 A.2d 992, 1005 (D.C.), *cert. denied,* 502 U.S. 1017, 112 S.Ct. 667, 116 L.Ed.2d 757 (1991); *Scutchings v. United States,* 509 A.2d 634, 637 (D.C.1986). Nor is a constructive amendment waived by a guilty plea. *United States v. Spinner,* 180 F.3d 514, 516 (3d Cir.1999) (citing cases). Given these basic principles, we consider appellant's three claims of constructive amendment.

■ Appellant argues, first, that by allowing him to plead guilty as an aider and abettor to a charge of first-degree burglary while armed in count 25, rather than as a principal, the court constructively amended that count. This argument is essentially frivolous. It is firmly settled in this jurisdiction that "[o]ne who aids and abets the principal in committing the crime is charged as a principal." *Tyler v. United States,* 495 A.2d 1180, 1182 (D.C.1985), citing D.C.Code § 22–105 (1996).[9] Indeed, we have specifically held that "if an indictment charges an individual as a principal, but the accused is convicted as an aider and abettor, there is not a constructive amendment or variance of the indictment." *Ingram,* 592 A.2d at 1006; *see also Mason v. United States,* 256 A.2d 565, 567 (D.C. 1969). Regardless of whether appellant was charged as a principal or as an aider and abettor, count 25 would read exactly the same. There was no amendment, constructive or otherwise.

■ Second, appellant asserts that his guilty plea to first-degree theft rather than first-degree burglary, based on the October 4 incident, amounted to a constructive amendment of the indictment. On the contrary, the record plainly shows that the government *amended the plea offer*—not the indictment—by allowing appellant to plead to another count *already contained in the indictment,* namely, count 41 (see note 7, *supra*), in lieu of count 34 as originally offered. Appellant· admitted at the plea hearing that he took more than $1,000 from Ms. Newell's bank account with her ATM card, without her permission, and with the intent to deprive her permanently of the money. The court correctly held that the government's factual proffer included all the elements of this alternative charge, as set forth in count 41.[10]

---

**9.** Section 22–105 (now codified as D.C.Code § 22–1805 (2001)) provides that "all persons . . . aiding or abetting the principal offender, shall be charged as principals and not as accessories . . . ."

**10.** Appellant also argues that the trial court erred in concluding that he had committed first-degree theft because count 41 refers to theft of "electronic equipment, camera equipment, jewelry and other personalty," not to theft of money from a bank account by the

■ Appellant's third claim of constructive amendment, that the court erred in allowing appellant (at the government's urging) to plead guilty to robbery rather than assault with intent to rob, has substance. Indeed, the government now concedes that this was error, arguing only that appellant has not shown prejudice, since the statutory penalties for robbery and assault with intent to rob are identical. *Compare* D.C.Code § 22–2901 (1996) (sentence for robbery "shall [be] ... not less than two years nor more than fifteen years") *with* D.C.Code § 22–501 (1996) (sentence for assault with intent to rob "shall be ... not less than two years or more than fifteen years").[11] In light of the Supreme Court's recent decision in *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), we are constrained to agree with the government.

■ We recently held in *Smith v. United States*, 801 A.2d 958, 962 (D.C. 2002), that "plain error review applies to a claim that an indictment has been constructively amended if an objection has not been made at the trial level." That holding was based on *United States v. Cotton*, 122 S.Ct. at 1785–1786, in which the Supreme Court declared that a claim of constructive amendment which was not raised at the trial level must be reviewed under the three-part plain error test of *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[12] First, there must be "error," *i.e.*, "[d]eviation from a legal rule." *Id.* at 732–733, 113 S.Ct. 1770. The government quite properly concedes error in this case (as it did in *Cotton; see* 122 S.Ct. at 1785). Second, the error must be "plain," *i.e.*, "obvious" or "clear under current law." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. The error we find here is a deviation from the rule announced more than forty years ago in *Stirone*. Since *Stirone* has never been overruled, its holding is still "current law." Thus a conviction obtained in violation of *Stirone* meets the second part of the *Olano* test.[13]

■ Third, the error must "affect substantial rights." *Olano*, 507 U.S. at 734–735, 113 S.Ct. 1770. In *Cotton* the Court did not address this third part of the *Olano* test because it was satisfied, even assuming that substantial rights were affected, that the error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 122 S.Ct. at 1786; *see Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *Olano*, 507 U.S. at 732, 113 S.Ct. 1770. We followed the same

---

unlawful use of an ATM card. We reject this attempt to distinguish theft of personalty from theft of cash, for we have specifically held that "personalty" includes money deposited in a bank account. *See Dickson v. Mintz*, 634 A.2d 1243, 1244 (D.C.1993) (bequest included "money in banks, stocks and bonds, and other personalty").

11. These statutes have been recodified as D.C.Code §§ 22–2801 and 22–401 (2001), respectively, but the language has not been changed.

12. The decision in *Olano* was based on FED. R. CRIM. P. 52(b), which is identical to our local Rule 52(b).

13. If robbery were a lesser included offense of assault with intent to rob, there would be no *Stirone* issue in this case. But robbery requires proof of a fact that is not an element of assault with intent to rob, namely, a taking of something of value from someone else's possession. *See* D.C.Code § 22–2901 (1996), now D.C.Code § 22–2801 (2001) ("Whoever ... shall take from the person or immediate actual possession of another anything of value, is guilty of robbery"). Thus, under the familiar *Blockburger* test, robbery is not a lesser included offense of assault with intent to rob. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

reasoning and reached the same conclusion in *Smith, see* 801 A.2d at 962, and we do likewise here. *Cotton* tells us that a constructive amendment is not a "structural error," 122 S.Ct. at 1786,[14] so that appellant must show that he was prejudiced in order to prevail on this particular claim. For two reasons, we can find no prejudice. First, as we have noted, the penalties for robbery and assault with intent to rob are identical, and in fact appellant received the maximum sentence available under either statute. Second, as the government points out in its brief, "although appellant denied that he touched Mr. Jug, even under appellant's version of the incident he admitted conduct that constitute[d] an assault with intent to commit robbery as an aider and abettor of Mr. Long." Thus *the facts admitted by appellant* established appellant's guilt of the crime of robbery. For these reasons we conclude that the trial court did not commit plain error in allowing appellant to plead guilty to robbery, rather than assault with intent to rob, in connection with the events of August 9.

### B. The Plea Agreement

Appellant next contends that the government violated the plea agreement by failing to recommend a sentence of fifteen to forty-five years' imprisonment (he actually received fifty-six years to life). The record refutes this contention. The details of the plea agreement were set forth in meticulous detail in the course of a plea hearing that lasted almost four hours. The transcript of that hearing affirmatively shows that the government made no promises as to the sentences that the court would impose, and the court itself made absolutely clear that it alone would decide what the sentences would be for the various offenses. Appellant now claims that the government should have adhered to its "initially offered plea," but he fails to mention that he previously rejected that initial offer (and others as well),[15] and that the government was prepared to go to trial— with thirty-seven witnesses sitting in the witness room and a panel of prospective jurors on call in another part of the courthouse—when appellant decided that he might be interested in a plea after all. At that point, the prosecutor told the court without contradiction, there was "no plea on the table." It was only after considerable further discussion that the government made a new plea offer, which appellant discussed with his attorney during a twenty-minute recess before agreeing to accept it. In the course of outlining the details of that offer, both the prosecutor and the court made clear that the government was making no promises about sentencing, that the prosecutor expressly reserved the right to allocution, and that the court alone would decide what the sentences would be.

On this record we conclude that appellant's claim that the government failed to honor its part of the plea agreement concerning the sentences to be imposed is entirely without factual support.

### C. Ineffective Assistance of Counsel

Appellant's final claim is that his attorney at the plea hearing rendered ineffective assistance. His claim is twofold.

---

14. As to what constitutes a structural error, *see Johnson*, 520 U.S. at 468–469, 117 S.Ct. 1544; *Arizona v. Fulminante*, 499 U.S. 279, 309–310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). All structural errors are constitutional, but not all constitutional errors are structural. *See Lyons v. United States*, 683 A.2d 1066, 1070–1071 (D.C.1996) (en banc).

15. Moreover, appellant's counsel told the court at the beginning of the plea hearing that appellant was "under the mistaken belief that the [previous] plea offer had been 15 to 45 years, but as I've told him, it wasn't."

First, he asserts that counsel failed to object to the constructive amendment of charges in the indictment, and to the government's alleged violation of the plea agreement. Second, appellant argues, as he did below, that his counsel failed to explain the plea offer to him "prior to the Rule 11 hearing" and was not adequately prepared for that hearing.

On the first point, we have already held that only one of the three purported amendments of the indictment was error, and we have concluded that it was not plain error. At worst, counsel might be criticized (as the government points out) for not interrupting the proceedings and asking the court to make sure that appellant was waiving his right to be indicted for the August 9 robbery. But since we are holding that appellant's conviction of that robbery did not result in any meaningful prejudice, any possible deficiency in counsel's performance with respect to that offense is demonstrably harmless. As for counsel's supposed failure to call attention to the government's alleged breach of the plea agreement, we have already ruled that there was no such breach.

The second part of the ineffective assistance claim depends ultimately on appellant's testimony, which the motions judge found "wholly unbelievable." The judge also credited counsel's testimony, which recounted in detail his discussions with both appellant and the prosecutor, before and during the plea hearing, and his reasons for advising appellant to accept the government's offer. Relying on counsel's testimony and on the available record, the judge ruled that appellant had not met either part of the two-part *Strickland* test, and that "there was nothing ... that in any way caused [the judge] to question [counsel's] performance in representing his client." On the extensive record before us, we find no reason to overturn that ruling, and thus we reject appellant's claim of ineffective assistance.[16]

### III

We hold that the trial court committed error in allowing appellant to plead guilty to an offense with which he had never been charged, but that, in the circumstances of this case, it was not plain error. We find no other reason to disturb an otherwise valid guilty plea which the record shows was freely and voluntarily made. We therefore affirm in its entirety the denial of appellant's motion to withdraw his guilty plea.

*Affirmed.*

---

16. In his reply brief, appellant asserts for the first time that the attorney who represented him at the hearing on the motion to withdraw the plea also rendered ineffective assistance. "It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief." *Stockard v. Moss,* 706 A.2d 561, 566 (D.C.1997) (citing cases); *accord, e.g., Herbert v. National Academy of Sciences,* 297 U.S.App. D.C. 406, 410, 974 F.2d 192, 196 (1992) (citing cases). In any event, assuming (without deciding) that appellant was constitutionally entitled to the effective assistance of counsel at that hearing, *but see Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), there is nothing in the record to suggest that counsel at the hearing rendered ineffective assistance within the meaning of *Strickland.*