**Barry E. CARTER, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 01–CF–722.

District of Columbia Court of Appeals.

Argued April 24, 2003.
Decided June 5, 2003.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman, Peter Taylor, and Sharon Marcus–Kurn, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

Barry E. Carter was indicted on one count of first degree felony sexual abuse (rape), D.C.Code § 22–4102 (1996),[1] and one count of misdemeanor sexual abuse (sexual touching of the complainant's genitalia), D.C.Code § 22–4106 (1996).[2] A jury acquitted Carter of the felony, but the judge found him guilty of a sexual touching of the complainant's thigh. Carter ap-

---

1. Now codified as D.C.Code § 22–3002 (2001).

2. Now codified as D.C.Code § 22–3006 (2001).

peals, claiming, *inter alia,* that the indictment was constructively amended and that, as a result, he was convicted of a crime with which he had not been charged. Carter also contends that the evidence was insufficient to support a finding that he touched the complainant's inner thigh—the only touching of a thigh that is proscribed by the misdemeanor statute—and that the judge failed to recognize the prosecution's obligation to prove a sexual touching of the inner thigh, as distinguished from any other part of the thigh.

We conclude that the indictment was not constructively amended and that, although there was a variance between the indictment and the evidence presented at trial, Carter neither claimed prejudice nor made any evidentiary showing that the variance impaired his defense. We are also satisfied that the evidence, viewed (as it must be) in the light most favorable to the prosecution, was sufficient to support a finding, beyond a reasonable doubt, that Carter violated the misdemeanor sexual assault statute by sexually touching the complainant's inner thigh. Finally, the trial judge stated in her findings only that Carter sexually touched the complainant's thigh, without differentiating between the thigh and the inner thigh. We conclude that the judge was familiar with the statute and that, notwithstanding her failure explicitly to mention the portion of the thigh with which Carter had contact, she effectively found Carter guilty of a sexual touching of the *inner* thigh. Accordingly, we affirm.

## I.

### THE TRIAL COURT PROCEEDINGS

The second count of the two-count indictment which the grand jury returned against Carter reads as follows:

On or about August 13, 1999, within the District of Columbia, Barry E. Carter engaged in sexual contact with [K.D.][3] that is, Barry E. Carter touched [K.D.'s] genitalia, with the intent to abuse, humiliate, harass, degrade or arouse the sexual desire of Barry E. Carter or [K.D.] (Misdemeanor Sexual Abuse in violation of 22 D.C.Code Section 4106).

At trial, however, the prosecutor introduced no evidence that Carter had any contact with K.D.'s genitalia. The essence of K.D.'s testimony with respect to the misdemeanor count was that while Carter, an acquaintance, was seated next to her in a movie theater, he attempted to touch K.D.'s vaginal area. According to K.D., she was able to prevent Carter from reaching her genitalia by keeping her legs tightly together. As a result, Carter's hand got no further than K.D.'s thigh.[4] The trial judge credited K.D.'s testimony.

After the prosecution and defense had presented their evidence, Carter's attorney made a motion for a judgment of acquittal. The judge denied the motion but stated: "I don't believe the evidence shows that the defendant [touched] [K.D.'s] genitalia or her breasts in the movie theater .... The complainant reported only that [Carter] was *rubbing her clothed thighs.*"

Following Carter's acquittal of raping K.D., as charged in the felony count of the indictment, the judge turned to the misdemeanor count and stated:

[M]y findings of fact are that the defendant did touch the complainant intending ... for it to be sexual, but on her thighs.

---

3. K.D. was seventeen years of age at the time of the incident, and we identify her in this *opinion only by her initials.*

4. Carter did not deny touching K.D.'s thigh, and he also acknowledged other sexual activity, but he claimed that it was consensual.

After hearing argument from counsel as to the legal consequences of the foregoing finding,[5] the judge found Carter guilty:

> I ... believe that how one commits an offense is not an element of an offense. That is, there can be alternative ways of committing the offense of sexual contact. So I did credit the witness' testimony and found that it was not only against her will but done with the intent to arouse or gratify the sexual desire of Mr. Carter.

Carter's attorney filed a post-trial written motion for judgment of acquittal, but the judge orally denied the motion on the day of sentencing. This appeal followed.

## II.

## LEGAL ANALYSIS

A. *Carter's claim of constructive amendment.*

 The Fifth Amendment to the United States Constitution provides in pertinent part that "[n]o person shall be held to answer for a capital or otherwise infamous crime,[6] unless on a presentment or indictment of a Grand Jury." In this case, the grand jury alleged that Carter touched K.D.'s genitalia, while the judge, as trier of fact, found that he touched her thigh. It is therefore undisputed—indeed, it is indisputable—that there was an inconsistency between the allegations in the indictment and the proof at the trial. *See, e.g., Scutchings v. United States,* 509 A.2d 634, 638 (D.C.1986). The question is whether this inconsistency constituted a "constructive amendment," as Carter claims, or merely a "variance," as maintained by the government. This issue is a critical one, for a constructive amendment infringes on a defendant's constitutional right not to be prosecuted for a felony for which no grand jury has indicted him. In such cases, reversal *per se* is mandated, without the need for any showing of prejudice. *Johnson v. United States,* 613 A.2d 1381, 1384 (D.C.1992).[7] We have explained that

> [i]f there was a constructive amendment, then the absence of prejudice to [the defendant] is irrelevant, for "[d]eprivation of such a basic right [to be tried on the indictment returned by the grand jury] is far too serious to be ... dismissed as harmless error." *Stirone v.*

---

5. During this exchange, defense counsel argued to the trial judge that "[the misdemeanor sexual abuse charge] was charged in a particular way, particular behavior. And it's that behavior which our position is the government must prove beyond a reasonable doubt for a guilty finding." The trial judge acknowledged this claim when she responded, "it's [the defendant's] position that the act of touching a clothed thigh ... can be misdemeanor sexual abuse but that's not what the government charged."

6. We are not dealing here with a "capital or otherwise infamous crime," but with misdemeanor sexual abuse, which could properly have been charged by information, *see* Super. Ct.Crim. R. 7, without any involvement of a grand jury. Federal appellate courts have held, however, that "once the prosecution elects to proceed by indictment it must follow the rules developed to govern use of indict-

ments." *United States v. Pandilidis,* 524 F.2d 644, 647–48 (6th Cir.1975) (citing *United States v. Fischetti,* 450 F.2d 34 (5th Cir.1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972)); *United States v. Goldstein,* 502 F.2d 526, 531 (3d Cir.1974). Although this court apparently has not addressed the issue, the government has not challenged these federal decisions, and we assume without deciding that the same rule applies in this jurisdiction.

7. This is the case only where, as here, a defendant has preserved the issue in the trial court. *Cf. Johnson v. United States,* 812 A.2d 234, 242 (D.C.2002) (citing *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)) (review is for plain error where claim of constructive amendment was not presented to the trial court); *Smith v. United States,* 801 A.2d 958, 962 (D.C.2002) (same).

*United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). If, on the other hand, there was no constructive amendment, but merely a variance (or something less than a variance), then reversal is appropriate only upon a showing of prejudice[.] *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *Johnson,* 613 A.2d [at] 1384.

*Robinson v. United States,* 697 A.2d 787, 789 (D.C.1997) (footnote omitted).

▇▇▇ "The distinction between [a constructive amendment and a variance] is not always precise, however, and to evaluate whether an indictment has been constructively amended, the court must compare the evidence and the instructions to the jury with the charge specified in the indictment." *Johnson,* 613 A.2d at 1385. "A variance becomes a constructive amendment when facts introduced at trial go to an *essential element* of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment." *Id.* at 1384 (quoting *Scutchings,* 509 A.2d at 637) (quoting *Giles v. United States,* 472 A.2d 881, 883 (D.C.1984)) (emphasis in original; internal quotation marks and ellipsis omit-

ted).[8] "A variance, on the other hand, occurs when the facts proved at trial materially differ from the facts [alleged] in the indictment but the essential elements of the offense are the same." *Ingram v. United States,* 592 A.2d 992, 1006 (D.C. 1991) (quoting *United States v. Keller,* 916 F.2d 628, 634 (11th Cir.1990)) (internal quotation marks omitted); *see also Johnson,* 613 A.2d at 1384–85 (quoting *Ingram* ).

In light of the foregoing authorities, our first inquiry must be whether the inconsistency between the indictment and the proof went to an essential element of the offense of which Carter was convicted. In this connection, D.C.Code § 22–4106 (1996) [9] provides:

Whoever engages in a sexual act or sexual contact with another person and who should have knowledge or reason to know that the act was committed without that other person's permission, shall be imprisoned for not more than 180 days and, in addition, may be fined in an amount not to exceed $1,000.

D.C.Code § 22–4101(9) (1996) [10] provides:

"Sexual contact" means the touching with any clothed or unclothed body part or any object, either directly or through

**8.** *See also Wooley v. United States,* 697 A.2d 777, 785 (D.C.1997) (Farrell, J., with whom Steadman, J., joined, concurring):

There appear to be two sub-types of constructive amendment cases. One has found a constructive amendment where the jury convicted the defendant of a *factually* different offense from that presented to the grand jury. *Johnson,* 613 A.2d [at] 1387; *Scutchings,* 509 A.2d [at] 638–39. *See Stirone v. United States,* 361 U.S. 212, 215–17, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In the other type, constructive amendment analysis has been applied to an allegation that the jury convicted the defendant of a different offense *legally understood* from that presented to the grand jury. *Hayward v. United States,* 612 A.2d 224, 226–27 (D.C.1992); *Meredith v. United States,* 343 A.2d 317,

319–20 (D.C.1975) (per curiam); *Jackson v. United States,* 123 U.S.App. D.C. 276, 278–80, 359 F.2d 260, 262–64, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966).

(Emphasis in original.) There is no claim in this case that the offense of which Carter was convicted was a different offense "legally understood" from the offense charged by the grand jury. Carter bases his claim of constructive amendment solely on the authority of the *Stirone—Scutchings—Johnson* line of cases, which concern *factual* variations between the indictment and the proof.

**9.** Now D.C.Code § 22–3006 (2001).

**10.** Now D.C.Code § 22–3001(9) (2001).

the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

The face of the statute reveals that the touching of the victim's genitalia is not an element of misdemeanor sexual assault, for this offense can be committed, without contact with the genitalia, by a sexual touching of any one of five other parts of the body. Analogous case law fully supports this position. *See, e.g., Carter v. United States,* 591 A.2d 233, 234 (D.C. 1991) (per curiam) (where the defendant, who was charged with distribution of a controlled substance sold heroin but believed it to be cocaine, the identity of the controlled substance was not an element, and the holding of *Stirone* was not applicable); *United States v. Knuckles,* 581 F.2d 305, 312 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978) (where the defendants were charged with possession of heroin with the intent to distribute it, but where the contraband may have been cocaine, there was no constructive amendment because "[t]he operative facts were the same whether the controlled substance was heroin or cocaine"); [11] *United States v. McIntosh,* 23 F.3d 1454, 1457 (8th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994) (specific type of firearm is not an element of possession of firearm during a crime of violence); *United States v. Hamilton,* 992 F.2d 1126, 1130 & n. 5 (10th Cir.1993) (same). Because there can

be no constructive amendment unless the departure affects an essential element of the offense, *United States v. Rosenthal,* 9 F.3d 1016, 1021 (2d Cir.1993), "[c]onvictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment." *United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

Carter nevertheless contends that the ruling of the trial court in this case is contrary to the Supreme Court's decision in *Stirone,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, and this court's holdings in *Scutchings,* 509 A.2d 634, and *Johnson,* 613 A.2d 1381. In *Stirone,* the Supreme Court reversed the defendant's conviction for violating the Hobbs Act, concluding that the trial court constructively amended the indictment. To prove a violation of this statute, the prosecutor had to establish an extortion or robbery that interfered with interstate commerce. 361 U.S. at 218, 80 S.Ct. 270. The indictment alleged that the defendant had interfered with the interstate movement of sand. The government presented evidence to that effect, but it also adduced testimony that the defendant had interfered with the transportation of steel. The trial judge had instructed the jury that it could convict if the prosecution proved interference with the interstate movement of either sand or steel. The Court explained:

Here, as the trial court charged the jury, there are two essential elements of

---

11. *Wooley,* 697 A.2d 777, and *Robinson,* 697 A.2d 787, both involved situations similar to that in *Knuckles.* It is not easy to identify the proposition for which *Wooley* and *Robinson* stand, because although the convictions were reversed in both cases, the six judges who made up the two divisions split into three groups of two. *See Wooley,* 697 A.2d at 777 n. *; *Robinson,* 697 A.2d at 793 & n. 7. In any event, only two of the six judges expressed

disagreement with *Knuckles,* and the effectively dispositive opinion—that of Judge Farrell, joined by Judge Steadman, in *Wooley, see Robinson,* 697 A.2d at 793 & n. 7 (opinion of Judge Schwelb, joined by Judge King)—predicated reversal on a *legal* difference between the punishments for distribution of heroin and distribution of cocaine, *Wooley,* 697 A.2d at 786–87, a consideration that does not arise in the present case.

a Hobbs Act crime: interference with commerce, and extortion. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage. . . . *It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.*

*Id.* at 218, 80 S.Ct. 270 (emphasis added).

According to Carter, the holding in *Stirone* applies here by analogy. Paraphrasing *Stirone*, Carter argues that "where a particular kind of [sexual contact] is charged . . . a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that [sexual contact] of one kind or another had [occurred]."

In our view, however, *Stirone* and its District of Columbia progeny are not dispositive. In *Jackson v. United States,* 123 U.S.App. D.C. 276, 359 F.2d 260, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966), Judge Leventhal wrote for the majority of the court that

> [t]he federal courts have scrapped the old rule condemning every variance between indictment and proof, and convictions are not now set aside except for variance resulting in substantial prejudice to defendant. *Berger v. United States,* 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

123 U.S.App. D.C. at 279, 359 F.2d at 263 (additional citations omitted). Explaining the Supreme Court's decision in *Stirone,* Judge Leventhal stated that "the prosecution was relying at trial on *a complex of facts distinctly different* from that which the grand jury set forth in the indictment."

*Id.* (emphasis added). The court added that "[i]f *Stirone* is pushed to extremes, it would reinstate the old rule making every variance fatal," 123 U.S.App. D.C. at 280, 359 F.2d at 264, contrary to *Berger,* 295 U.S. at 81, 55 S.Ct. 629.

▮ Although *Jackson* was decided prior to *M.A.P. v. Ryan,* 285 A.2d 310 (D.C. 1971), we arguably are not required to follow it, for in *Jackson,* there was no pretrial objection, and the court was reviewing for plain error. Nevertheless, four of the six judges in *Wooley* and *Robinson* adopted the essence of Judge Leventhal's analysis. "[T]he court in *Jackson* correctly placed the emphasis under *Stirone* on whether a *distinct constellation of facts* separated the crime charged from the crime proven." *Wooley,* 697 A.2d at 786 n. 2 (Farrell, J., joined by Steadman, J., concurring) (emphasis added in part). "A constructive amendment of the indictment occurs if, *and only* if, the prosecution relies at trial on a complex of facts distinctly different from that which the grand jury set forth in the indictment." *Robinson,* 697 A.2d at 789–90 (opinion of Schwelb, J., joined by King, J.) (emphasis added) (quoting *Jackson,* 123 U.S.App. D.C. at 279, 359 F.2d at 263). The standard articulated by Judge Leventhal has thus effectively been adopted in this jurisdiction by a majority of both divisions in *Wooley* and *Robinson,* and we formally adopt it now.

In the present case, it cannot fairly be said that Carter was convicted on the basis of a complex of facts "distinctly different" from the facts alleged by the grand jury. On the contrary, the events reflected in the trial judge's findings and those alleged in the indictment occurred on the same day, at the same time, at the same location, and between the same individuals. In fact, common sense tells us that in order to reach K.D.'s genitalia, Carter's hand must in all probability have touched

her inner thigh. In substance, the offense of which the judge found Carter guilty was or resembled an unsuccessful attempt to commit the offense alleged by the grand jury. Under the cases cited, this is not the kind of variance between indictment and proof on which a successful claim of constructive amendment can be predicated. In other words, the record before us does not present a situation calling for automatic reversal; the judgment may be set aside, as in the case of any variance, only upon an adequate showing of prejudice.[12]

## B. *Prejudicial variance.*

■ Our conclusion that the indictment was not constructively amended would not ordinarily end our inquiry. The defendant was charged with touching K.D.'s genitalia, yet the major factual issue addressed on appeal is whether he touched the complainant's "inner thigh"—a violation of the statute—or only some other part of her thigh, which is not a violation. At the time that Carter's attorney was planning his strategy and cross-examining K.D., the issue of "inner thigh" versus "thigh" had not yet emerged, and the subsequent development of a controversy over this point contained obvious potential for prejudice. The sufficiency *vel non* of the evidence thus turns on an issue to which Carter's litigation strategy had not been addressed. A variance may be prejudicial if, *inter alia,* "the accused ... was so surprised by the proof that he was unable to prepare his defense adequately." *Roberts v. United States,* 743 A.2d 212, 223 (D.C.1999) (quoting *United States v. Francisco,* 575 F.2d 815, 819 (10th Cir.1978)). The defense might perhaps plausibly contend that this case involved such a surprise.

■ But Carter, whose sole defense was consent, has made no claim of prejudicial variance, either in the trial court or on appeal. At the trial, his attorney did not create a record which would support such a claim. Subsequently, in his opening brief on appeal, Carter's appellate counsel made no allegation of a prejudicial variance. In its brief, the government noted the absence of such a claim. In his reply brief, Carter's counsel, adhering exclusively to the claim of constructive amendment,[13] asserted that "the government's discussion of whether appellant has demonstrated prejudice is beside the point." Where, as here, the defense has eschewed any claim of prejudicial variance, even as a

---

**12.** The principal authorities, other than *Stirone,* on which Carter relies are distinguishable on the same ground as *Stirone;* each involved a "distinctly different complex of facts" as that phrase was used by Judge Leventhal in *Jackson.* In *Scutchings,* 509 A.2d 634, the grand jury charged the defendant with obstructing justice by threatening a husband, while the evidence at trial showed that the defendant had tried to bribe the wife. *See Wooley,* 697 A.2d at 786 (Farrell, J., joined by Steadman, J., concurring) (distinguishing *Scutchings* from *Wooley* and from *Jackson* because, as in *Stirone,* the jury was allowed to pick between "very different factual theories"). In *Johnson,* 613 A.2d 1381, the indictment alleged that the defendant forged the signature on seventeen bank checks. The evidence presented by an expert witness for the prosecution showed that although other handwriting on the checks was the defendant's, he did *not* forge the signatures. Rather, the forgery of the signatures was effected by a person other than the defendant possibly at a time and place different from the time and place alleged by the grand jury. The complex of facts proved at trial was thus critically different from the scenario described in the indictment.

**13.** The essence of a claim of constructive amendment is that the defendant may not be convicted of a felony for which the grand jury has not indicted him. *See, e.g., Ingram v. United States,* 592 A.2d 992, 1005 (D.C.1991). Carter's allegation that there was a constructive amendment therefore does not automatically embrace a claim of prejudice.

308

fall-back position, and has made no attempt to show prejudice, reversal upon a ground not asserted either at trial or on appeal cannot be justified.

## C. *The sufficiency of the evidence.*

 Carter also contends that the evidence was insufficient to prove beyond a reasonable doubt that he sexually touched K.D.'s inner thigh. He claims that the trial judge committed reversible error by denying Carter's motion for judgment of acquittal (MJOA). Carter so argues because K.D. never specifically stated that Carter touched her "inner" thigh. Rather, she testified that Carter "tried to feel on my thighs and, like, force his hand between my thighs." When asked what part of her thigh Carter touched, she repeatedly responded that it was the "top part." K.D. also testified, however, that Carter "was basically forcing his hands *down my thighs to try to get to my vagina.*" (Emphasis added.)

 Under our now-familiar standard for assessing claims of evidentiary insufficiency, we view the record in the light most favorable to the prosecution. *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc); *Blakeney v. United States,* 653 A.2d 365, 369 n. 3 (D.C.1995). We recognize that it is "the province of the trier of fact to weigh the evidence [to] determine the credibility of witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C.1994); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We may reverse the judgment only if the evidence was insufficient to permit "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Rivas,* 783 A.2d at 134 (citation omitted). In the present case, the trial judge could fairly find beyond a reasonable doubt, as a matter of simple anatomy, that when Carter tried to force his hand "*down* [K.D.]'s thighs" in his unsuccessful attempt to reach her vagina, but was only prevented from doing so by the tightness which K.D. held her legs together, he must surely have touched her inner thigh. Indeed, the judge remarked that Carter's hand "may have been a few inches away from [K.D.'s] genitalia," and there is ample basis in the record for this estimate. Accordingly, we must reject Carter's claim of evidentiary insufficiency.

## D. *The sufficiency of the trial judge's finding.*

 The question whether Carter had committed misdemeanor sexual abuse arose three times during the trial: when the judge denied Carter's MJOA prior to the finding of guilt; during the judge's announcement of her decision; and during the denial of Carter's post-judgment MJOA. During those three discussions, the trial judge made no less than ten references to Carter's having touched K.D.'s thigh, but she never mentioned the victim's inner thigh. In particular, in finding Carter guilty, the judge never explicitly stated that he touched K.D.'s inner thigh. A sexual touching of the inner thigh violates the misdemeanor sexual abuse statute, see page 304–05, *supra,* while a touching of any other part of the thigh does not. *Id.*

Predictably, the parties draw different conclusions from the failure of the trial judge to mention the inner thigh. Carter claims that "[t]he trial court's finding of guilt was infected by an error of law" and argues, citing *Foster v. United States,* 699 A.2d 1113, 1115–16 (D.C.1997), that the judge's "misapprehension of the governing law" requires reversal of Carter's conviction. The government responds that "trial court judgments come to [this court] with

a presumption of correctness," (citing *Wright v. Hodges*, 681 A.2d 1102, 1106 (D.C.1996) (per curiam)); that "the presumption is that the trial judge knew the proper standard to apply, and applied it," (citing *Hightower v. United States*, 117 U.S.App. D.C. 43, 46, 325 F.2d 616, 619 (D.C.1963) (per curiam), *cert. denied*, 384 U.S. 994, 86 S.Ct. 1903, 16 L.Ed.2d 1009 (1966)); that Carter has failed to demonstrate error; and that his conviction should be affirmed. The government also points out that the judge examined the statute during oral argument, that she thanked the prosecutor for handing her a copy of it, and that she evidently read it. Thus, according to the government, the judge must have known that the statute makes it a crime to sexually touch the inner thigh, not any other part of the thigh, and her finding of guilt must therefore have referred to such a prohibited touching.

Although ideally the judge would have specified in her decision that Carter sexually touched K.D.'s inner thigh, we are satisfied from the overall context that her finding of guilt was sufficient. We see no appreciable possibility that the judge, who actually held the book containing the misdemeanor sexual abuse statute in her hand, failed to read the statute. During the various discussions between the trial judge and the attorneys, the prosecutor used the term "inner thigh" on several occasions, so that the judge must have known that the government was asking her to convict Carter of violating the "inner thigh" provision of § 22–4101(9). Carter's sole defense was consent, and Carter's attorney never argued or even suggested that his client touched K.D.'s outer thigh or the top of her thigh, rather than her inner thigh. Likewise, the defense never requested the judge to clarify her finding after the judge had made it.

Moreover, K.D.'s testimony that Carter was attempting to push his hand between K.D.'s clenched legs towards her vagina, if true, surely signified that he touched the inner thigh, and not the outer thigh, *en route* to his intended destination. There is no indication that the judge disbelieved K.D.'s testimony to this effect.

Perhaps any single one of the foregoing factors would be insufficient to sustain a finding of guilt in which the judge omitted any explicit reference to the inner thigh. Taken together, however, all of these considerations persuade us that notwithstanding the judge's failure to use the words "inner thigh," her finding of guilt should be sustained.

### III.

### CONCLUSION

For the foregoing reasons, Carter's conviction is

*Affirmed.*

SCHWELB, Associate Judge, concurring.

Whenever there is even the slightest uncertainty that the conduct of which a defendant has been convicted is a crime, I would prefer to go the last mile to be absolutely certain. More specifically, I would remand to the trial judge so that she could clarify her finding and remove any lingering doubt about its meaning. But in this case, any uncertainty about what the judge meant is surely minimal—perhaps a scintilla, or a fraction of one. Accordingly, I join the judgment and the opinion of the court (written by me). In the most unlikely event that the judge did *not* mean to find that Carter sexually touched K.D.'s inner thigh, I am confident that she will act to avoid a miscarriage of justice by immediately notifying counsel so that appropriate steps can be taken on

Carter's behalf. I am also confident that, if it were to turn out that the fraction of a scintilla was indeed the fact—if, in other words, the judge were to disclose that the acts of which she found Carter guilty did not consist of conduct proscribed by the statute—then the government would do its duty and would, in the interests of justice, consent to the vacation of Carter's conviction.