**Jay Young LEANDER, a/k/a Leander Jay Young, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12–CM–227.**

District of Columbia Court of Appeals.

Argued Feb. 28, 2013.

Decided May 9, 2013.

---

Enid Hinkes for appellant.

David C. Rybicki, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman and Elizabeth H. Da-

nello, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and OBERLY, Associate Judges, and BELSON, Senior Judge.

OBERLY, Associate Judge:

■ Following a bench trial, appellant, Jay Young Leander a/k/a Leander Jay Young, was convicted of one count of simple assault, in violation of D.C.Code § 22–404 (2001), and one count of attempted possession of a prohibited weapon, in violation of D.C.Code § 22–4514(b) (2001) ("APPW (b)"). On appeal, he raises three arguments: (1) he claims the government violated Super. Ct.Crim. R. 16 by not timely delivering the videotape of an interview between appellant and a police detective that was used by the government at trial to impeach appellant's testimony; (2) he challenges the sufficiency of the evidence to support the convictions; and (3) he claims the trial court impermissibly interfered with plea negotiations. We find no merit to his first two arguments, but we agree with his third contention. Finding the error harmless, however, we affirm the judgment of the Superior Court.

## I. Background

Both charges arose out of an altercation between appellant and his brother at their mother's house on Thanksgiving Day in 2011. According to the evidence credited by the trial court, when the scuffling between the two brothers was over, appellant's brother had slipped on the living room floor and ruptured a tendon when appellant lunged at him. Appellant's brother then sustained a cut on his left hand, requiring stitches and causing permanent damage, while trying to protect his head from a blow with a gravy pot appellant took from the stove in the kitchen and brought to the living room to take a swing at his brother's head.

Just prior to the start of trial, the trial judge asked the parties whether the case could be resolved with a plea. The judge told appellant that she "g[a]ve a lot of credit for acceptance of responsibility." She then took a ten-minute recess so that defense counsel could talk to his client. When the proceedings resumed, defense counsel advised the judge that the parties had been unable to reach an agreement. The judge responded by saying to appellant, "All right. Well, I do give a lot of credit for acceptance of responsibility.... I don't really get in the middle of plea negotiations. I mean, I just want to make sure that, although you have been sitting here watching all morning, so you kind of know my policy, but that's—you know, I don't care one way or the other. I'm here. I'm going to be going to trial. If it's not your trial, it will be somebody else's trial. I just want to make sure that, you know, that you've explored that if that's what you wanted to do."

The trial then commenced with opening statements. The government put on one witness, the victim (appellant's brother), and then rested its case. After the court denied appellant's motion for judgment of acquittal, the defense put appellant on the stand as its only witness. The government called as its rebuttal witness the detective who responded to a call from the victim during the scuffle, and the trial then ended with closing arguments from each side.

After closing arguments, the judge summarized the evidence and concluded that she found the victim's version of events more credible than appellant's. She found appellant guilty of both counts with which he had been charged (simple assault and APPW (b)) and then proceeded directly to sentencing. On the simple assault count, she sentenced appellant to 180 days in jail

with all but 60 days suspended. On the APPW (b) count, she sentenced appellant to 180 days in jail, all of which were suspended. She also sentenced appellant to 12 months' supervised probation and ordered him to enroll in drug and alcohol treatment and anger management programs; stay away from his brother and his brother's residence, and pay a $100 assessment to the Victims of Violent Crime Compensation Fund.

## II. Discussion

### A.

We review appellant's first argument for plain error because, although his counsel claimed not to have received the videotaped interview prior to trial (a contention the government does not dispute although it does contend that it delivered the videotape to counsel's CJA "mailbox" five days before trial), counsel did not object to the trial court's decision to allow counsel time over the lunch hour to review the tape, did not request additional time to review the tape, did not object to the admissibility of the tape, and did not request any sanctions against the government for the allegedly belated delivery of the tape. In these circumstances, we find no cause for the trial court, *sua sponte*, to have imposed sanctions for an alleged violation of Rule 16. *See Sandwick v. District of Columbia,* 21 A.3d 997, 1002 (D.C.2011). Moreover, we agree with the government that appellant's statements on the videotaped interview, which the government introduced to undermine the credibility of his trial testimony about his prior criminal history and certain details of the altercation with his brother, did not go to the central issue of which brother was the first aggressor. The trial court determined that the physical exhibits supported the version of the fight put forth by appellant's brother more than they supported appellant's story, and it is not our role to second-guess that determination. *See, e.g., Stroman v. United States,* 878 A.2d 1241, 1244 (D.C.2005).

### B.

■ Second, we reject appellant's challenge to the sufficiency of the evidence. The trial court made a determination that the testimony of appellant's brother that appellant struck him with the gravy pot was more credible than appellant's speculative testimony that his brother was injured in some other manner. We will not reverse the fact-finder's credibility determinations unless they are clearly erroneous, and here they are not. *See Stroman,* 878 A.2d at 1244. We also reject appellant's contention that the gravy pot was not a "dangerous weapon" within the meaning of D.C.Code § 22–4514(b). We have held repeatedly that an ordinary household object may be a dangerous weapon if it is "known to be likely to produce death or great bodily injury in the manner in which it is used, intended to be used, or threatened to be used." *Harper v. United States,* 811 A.2d 808, 810 (D.C. 2002) (internal quotation marks omitted).

### C.

■ Finally, appellant argues that the trial judge violated Super. Ct.Crim. R. 11(e) by participating in the plea negotiations and encouraging appellant to enter a guilty plea. We find no indication that the judge *directly* participated in the plea *negotiations* but we do conclude that her comments violated Rule 11(e). The Rule provides, in pertinent part, that "[t]he Court shall not participate in any discussions between the parties concerning any ... plea agreement." This means, among other things, that "the judge should not through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agree-

ment should be accepted or that a guilty plea should be entered." ABA Standards for Criminal Justice, Vol. III, 3d ed., Part III ("Plea Discussions and Plea Agreements"), Standard 14–3–3(c). Here, while stating that she had "no desire to get in the middle of plea negotiations," it was nonetheless the judge who, *sua sponte*, raised the subject of appellant's pleading guilty and suggested that, if he did, he could expect leniency at sentencing because the judge "gives a lot of credit for acceptance of responsibility." We have no doubt that the judge was well-intentioned and wished to ensure that appellant was properly informed with respect to the options before him, but what she said, as well as when she said it, *i.e.*, just as appellant was coming to grips with the reality of going to trial before the very judge making the inquiry about the possibility of a plea agreement, ran contrary to the bright line drawn by the Rule. A defendant in appellant's position could well have taken the judge's comments as coercive and have been concerned about the judge's impartiality in the event he chose to go to trial. *See, e.g., United States v. Tobin*, 676 F.3d 1264, 1303–08 (11th Cir.2012) ("a district court's suggestion that a defendant look into pleading guilty may give the impression that the district court has already taken a position regarding the question of guilt and this can undermine the defendant's confidence in the neutrality of the tribunal and the fairness of the subsequent proceedings"); *see also United States v. Cano–Varela*, 497 F.3d 1122, 1133 (10th Cir.2007) ("[T]he Courts of Appeals all appear to hold that any discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned.") (internal quotation marks omitted); *Boyd v. United States*, 703 A.2d 818, 821 (D.C. 1997) ("Rule 11(e)(1) leaves no room for doubt that its purpose and meaning are

that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.") (internal quotation marks omitted).

■ We are well aware of the heavy burden placed upon trial judges assigned to individual calendars of felony or misdemeanor cases. If a significant number of defendants enter guilty pleas, it makes such calendars far more manageable. Yet we must sound a cautionary note. While it is well established that a defendant may be given credit at sentencing for a guilty plea, particularly where the plea can be seen as indicating genuine acceptance of responsibility for the offense committed, trial judges must take care how they articulate that principle in connection with any case or calendar of cases, and must avoid mentioning it at all to any defendant or defense counsel in a particular case prior to the defendant's conviction or entry of a guilty plea. In the proper exercise of individualized sentencing discretion, a judge must "refrain[ ] from committing himself in advance on what disposition he would make of the case if a guilty plea were entered." *United States v. Jackson*, 390 F.2d 130, 133 (7th Cir.1968).

■ Moreover, credit at sentencing for acceptance of responsibility cannot be viewed as an automatic entitlement of every defendant who pleads guilty. Other relevant sentencing considerations, such as the nature and extent of the crime committed, a lack of genuine contrition, the benefits secured by the plea to a lesser offense, appellant's particular criminal history, aggravating factors calling for enhancement of a sentence, the parties' sentencing allocutions, and the like, may justify withholding credit; *see also* 18 U.S.C. Appx.

§ 3E.1 (the federal Sentencing Guideline on "acceptance of responsibility") ("Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, ... will constitute significant acceptance of responsibility.... *However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.*") (emphasis added). In short, a trial judge should not announce what can be taken as a blanket *quid pro quo* policy of guaranteeing leniency in return for a guilty plea regardless of countervailing considerations.

The trial judge's reference in this case to her "policy" may or may not have been susceptible to such an interpretation. Even if not, though, trial judges must refrain, as we have said, from suggesting to defendants the benefits of pleading guilty. A defendant may be especially susceptible to such comments when, as in this case, they come at the very time the defendant must choose whether or not to exercise his constitutional right to go to trial. So that our words of caution are not misunderstood, we add that it is not inappropriate for a judge merely to inquire in a neutral manner before trial whether the defendant and defense counsel have had the opportunity to discuss the matter of a plea with government counsel, and to allow the parties time to do that if they have not yet had that opportunity.

■ Although we do not approve of a trial judge's making a statement about showing leniency in return for a guilty plea before a defendant has chosen whether to exercise his right to go to trial, as occurred

here, we find the error in this case to have been harmless. First, of course, we have already noted that appellant did not plead guilty despite the coercion appellant could have inferred from the judge's remarks. Perhaps even more important, appellant does not contend, and we can find no indication, that the trial court imposed a harsher sentence because appellant exercised his right to go to trial. We thus reject appellant's argument that this case is akin to *Thorne v. United States*, 46 A.3d 1085 (D.C.2012), in which the trial court impermissibly imposed a harsher sentence because defendant exercised his constitutional right to confront the witnesses against him. Rather, as in *German v. United States*, 525 A.2d 596 (D.C.1987), we conclude that appellant was in no way penalized for exercising his right to go to trial. Here, as in *German*, there is no evidence in the record to "demonstrate a reasonable likelihood of vindictiveness on the part of the trial judge," and here, as in *German*, there is no "direct evidence" of any irregularity in the sentence imposed. *Id.* at 603.[1] Rather, as in *German*, the record in this case causes us to conclude that "the sentence was based on the judge's more accurate appraisal of the circumstances after hearing the full disclosure of the facts at trial." *Id.* (internal quotation marks omitted). Absent prejudice stemming from the trial court's Rule 11(e) violation, the judgment of the Superior Court must be affirmed.

---

1. Appellant tries to bootstrap the claims of error we already have rejected in Sections II. A. and B. of this opinion into a showing of judicial vindictiveness. He fares no better in that attempt than in raising the alleged errors directly.