*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CT-1195

CHAUNCEY LEROY MADDUX, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-21767-13)

(Hon. Elizabeth C. Wingo, Magistrate Judge;
Hon. Ann O'Regan Keary, Reviewing Judge)

(Argued October 25, 2017　　　　　　　　　　Decided July 25, 2019)

*Benjamin Miller*, Public Defender Service, with whom *Samia Fam*, *Shilpa S. Satoskar*, and *Fleming Terrell*, Public Defender Service, were on the brief, for appellant.

*Janice Y. Sheppard*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Rosalyn Calbert Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, GLICKMAN, *Associate Judge*, and WASHINGTON, *Senior Judge*.

GLICKMAN, *Associate Judge*:  Chauncey Maddux appeals the denial of his post-sentence motion to withdraw his guilty plea to one count of driving under the influence of alcohol or a drug (DUI).  To prevail, he must demonstrate that permitting his plea to stand will result in manifest injustice.

Mr. Maddux's central claim of such injustice is that the magistrate judge "supplanted the plea bargaining process and coerced him to plead guilty by threatening that she would exercise her discretion to detain him if he stuck by his decision to go to trial, signaling that his only way to avoid that penalty would be to resolve the case via a guilty plea."[1]  Mr. Maddux asserts his "plea was coerced not because of the inherently coercive difference between detention and release, but because of the judge's outsized role in creating a coercive situation by sending Mr. Maddux an unmistakable message about the looming penalty she would impose if he went to trial as compared to the benefit she would allow him to enjoy (immediate release) if he took her advice to enter a guilty plea."[2]  As we shall see, this is all *nouveau* appellate hyperbole; Mr. Maddux did not claim such judicial overreaching and coercion in the proceedings below, and the record does not support that claim.

---

[1]  Reply Brief at 2.

[2]  *Id.* at 4.

Furthermore, that Mr. Maddux would not have pleaded guilty but for his desire not to be detained does not mean his plea was coerced or involuntary. As Mr. Maddux concedes, there was no impropriety in his pretrial detention; it was a result of his continuing drug use and his failure to appear in court as and when required.

Mr. Maddux also argues that the magistrate judge's asserted involvement with his plea negotiations made his plea manifestly unjust even if it did not render his plea involuntary. This claim also was not made in the proceedings below. It is unpersuasive; the judge did not participate in the plea negotiations or pressure Mr. Maddux to enter into them, and she did not advise him to plead guilty or tell him he would be better off if he did.

Lastly, reprising the claim he did make below, Mr. Maddux argues that his guilty plea is manifestly unjust because the judge failed to ensure it was voluntary by inquiring whether his sole reason for pleading guilty was to avoid pretrial detention. We disagree. That Mr. Maddux's reason for pleading guilty was to avoid detention did not render his plea involuntary or indicate to the judge the need to probe further after her complete and thorough inquiry in which he assured her that his plea was voluntary.

Because we reject Mr. Maddux's claims and conclude he has not shown manifest injustice in the acceptance of his guilty plea, we affirm the denial of his motion to withdraw it.

**I.**

The facts giving rise to the charges against Mr. Maddux, as proffered by the government when he pleaded guilty, are not in dispute. Shortly after midnight on November 25, 2013, Mr. Maddux was involved in a single-car accident in which he drove off the road and crashed into a fence. The police officer called to the scene found Mr. Maddux to be confused and disoriented. The officer noticed a nearly empty bottle of vodka next to Mr. Maddux on the front passenger seat of the vehicle. At the police station, Mr. Maddux displayed multiple "clues of impairment" on three field sobriety tests. After being informed of the Implied Consent Act, he refused to submit to chemical testing of his blood, breath, or urine for alcohol or drug content.[3]

---

[3] *See* D.C. Code §§ 50-1904.02 (implied consent to chemical testing after arrest), -1905 (penalties for refusing to submit specimens for chemical testing) (2014 Repl.). An arrestee's refusal to submit to chemical testing is admissible at trial as consciousness-of-guilt evidence. § 50-1905(c); *see also Stevenson v. District of Columbia*, 562 A.2d 622, 624 (D.C. 1989) ("[R]efusal to take the test is probative of the defendant's state of mind, and hence condition, at the time of the offense charged.").

Mr. Maddux was charged with DUI and with operating a vehicle while impaired (OWI).[4] He entered a plea of not guilty and subsequently consented to trial before a magistrate judge. As one of the conditions of his release pending trial, he was ordered to report to the Pretrial Services Agency for drug testing and treatment. Over the next few months, Mr. Maddux failed to report for drug testing on several occasions and, when he did report, he twice tested positive for PCP (phencyclidine). When Mr. Maddux also failed to appear for a status hearing on April 11, 2014, which had been scheduled to monitor his compliance with drug testing, the magistrate judge issued a bench warrant for his apprehension. The judge maintained the scheduled trial date of May 12, 2014.

The bench warrant was still outstanding when Mr. Maddux showed up for trial on that date almost two hours late, at 10:45 a.m. By then the judge had released the District's witnesses and begun discussing with counsel her intention to "do this trial as promptly as possible" given the likelihood that she would need to detain Mr. Maddux to ensure his presence at trial and the safety of the community. As grounds to detain him for those reasons, the judge cited the facts that he had tested positive

---

[4] D.C. Code §§ 50-2206.11 and -2206.14 (2014 Repl.), respectively.

for PCP, had stopped going for drug testing, and had missed court dates.[5]  Her biggest concern, as she explained to Mr. Maddux upon his untimely appearance in court, was that he might still be using PCP, a drug that causes people to be "dangerous" and "wildly unreliable" and "does horrible things to your brain."

The judge then decided to step Mr. Maddux back and order him to submit to an immediate drug test, saying she might be willing to release him that day if the drug test was negative.  However, said the judge, if Mr. Maddux tested positive, she expected to "hold [him] until the trial date . . . or until the case is resolved one way or the other."

At this point, Mr. Maddux requested and was granted permission to speak. He told the judge that "the way my household is set up, I'm a single parent, I have two sons, 19 and 14, . . . both with learning disabilities and things, I'm all they have," and so "when it gets down to it, if I have to sit home to be there with them and not do anything, then that's what I'll do."  In fact, he claimed, he already was "stay[ing] home every day, basically all day."  The judge told Mr. Maddux that she would hear

---

[5]  Mr. Maddux has never disputed the judge's authority or exercise of discretion under D.C. Code § 23-1329 (2012 Repl. & 2018 Cum. Supp.) to detain him until trial for violating the conditions of his release.

from him after they got the results of the drug test, adding that "[t]his is going to be a whole lot more persuasive to me when I know it's negative. Because if it's positive and you're telling me you're sitting home, I'm going to have a hard time buying that." The judge then addressed Mr. Maddux's counsel, saying, "In the meantime, obviously, Mr. Kamara, you're free to talk to [the government] about whether there's any kind of offer on the table that might, if [the drug test] is positive, allow [Mr. Maddux] some ability to return to his family." The case was then passed to allow for Mr. Maddux to be tested.

The drug test came back positive for PCP. Saying it looked like she would have to hold Mr. Maddux "to [e]nsure both the safety of the community and . . . that this trial occurs," the judge allowed him to be heard before she decided what to do. In response, Mr. Kamara reiterated Mr. Maddux's earlier statement that he was caring for his two teenage children, had no one else to look after them, and that "if given a chance, he would report to pre-trial and . . . follow any condition the Court would set." The judge was unpersuaded. As she observed, Mr. Maddux "was given that chance and he didn't do it," and while she generally tried not to detain defendants for less serious infractions, she could not follow that inclination here given Mr. Maddux's "ongoing" use of "this illegal drug that is so dangerous."

Having concluded that Mr. Maddux would be detained prior to trial, the judge inquired about "the soonest" date the trial could be set. When that date appeared to be June 11 (thirty days away), Mr. Kamara interrupted to say that Mr. Maddux told him the District previously had offered to "treat him as a first offender," and that "right now, at this point," Mr. Maddox was willing to take that offer (which he earlier had rejected) if it was "still on the table." As part of the deal, Mr. Kamara added, he would ask that Mr. Maddox be released pending sentencing.

This proposal turned out to be acceptable to the government.[6] In exchange for Mr. Maddux's plea of guilty to DUI, the prosecutor offered to dismiss the OWI count, waive step back (i.e., pretrial detention), and recommend the "standard first offender's treatment" package of a suspended sentence and supervised probation.[7]

---

[6] The prosecutor initially expressed uncertainty about Mr. Maddux's competence to enter a plea when he had just tested positive for PCP. The judge commented that this did not necessarily mean Mr. Maddux was under the influence of the drug at that time because PCP can remain in a user's system for seven days, and she had seen no signs of impairment when Mr. Maddux addressed her earlier. Mr. Kamara represented that Mr. Maddux was not then under the influence of PCP. The judge confirmed this with him directly during the plea colloquy.

[7] The package also would require Mr. Maddux to pay $100 to the Victims of Violent Crime Fund (VVCF).

The judge then placed Mr. Maddux under oath and conducted a plea colloquy. At the outset, Mr. Maddux stated he understood he was under oath and could be prosecuted for perjury if he gave false answers to the judge's questions. He denied having recently taken any drugs or medicines that might impair his ability to proceed with the colloquy, and when asked whether he was "thinking clearly," he answered, "Most definitely yes, ma'am." Next, the judge informed Mr. Maddux of the trial and appeal rights he would be giving up by pleading guilty, which he acknowledged, and she confirmed his understanding of the plea agreement and the promises made by the government. Mr. Maddux averred that nobody had "made any other promises to [him] in order to get [him] to plead guilty." The judge advised him of the maximum sentence he could receive for DUI (180 days in jail, a $1,000 fine, or both, plus the $100 VVCF contribution), and he confirmed that nobody had promised him what sentence the judge would impose.

The judge then asked the prosecutor to proffer the evidence the government would present at a trial (which we have summarized above). In response to the judge's follow-up questions, Mr. Maddux agreed that the proffer was correct and affirmed that when he was arrested, he had been driving in the District of Columbia after consuming alcohol or drugs that impaired his ability to operate the vehicle.

After all this, Mr. Maddux said he still wanted to plead guilty and had no questions about doing so. The judge then invited him to take some additional time to think about his decision and to talk it over with his attorney, Mr. Kamara. "[O]nce you've pled guilty," the judge emphasized, "it's relatively hard to withdraw your plea so if you have any questions, you should . . . try to ask them now." Mr. Maddux conferred with Mr. Kamara, who then informed the judge that he had asked Mr. Maddux "whether he has any question whatsoever about this plea and [Mr. Maddux] tells me that he does not have any." Mr. Maddux told the judge that was correct. The judge asked whether he was "sure." Mr. Maddux said he was. The judge then asked, "Has anybody forced you or threatened you in order to get you to plead guilty?" Mr. Maddux answered, "No, ma'am, no."

Mr. Maddux proceeded to plead guilty to DUI. The judge accepted the plea, finding that "Mr. Maddux does understand, that he's entering his plea voluntarily, and that there is a factual basis for the plea." No one disagreed. The judge released Mr. Maddux pending sentencing. Three weeks later, on June 2, 2014, the judge sentenced him, as contemplated by the plea agreement, to 180 days of incarceration, execution of the sentence suspended, and one year of supervised probation.

Six months later, on December 10, 2014, Mr. Maddux moved with the assistance of new counsel to withdraw his guilty plea on grounds of innocence and coercion. As to his innocence, Mr. Maddox maintained that he was "not intoxicated" when he crashed his car into a fence and that the crash actually was caused by an unspecified "underlying medical condition." As to the coercion, Mr. Maddux alleged he was "the sole caretaker of his two sons," one a minor and the other with "mental health issues"; they were facing eviction from their home pursuant to an active writ of restitution issued in a Landlord and Tenant Branch proceeding;[8] the judge had clearly stated her intention to hold him for trial; and "his attorney informed him that the only way he was going to remain in the community was to enter a guilty plea."[9] In these circumstances, to avoid being detained in jail for at least a month, "Mr. Maddux bit the bullet and entered a plea of guilty – not because he in fact was guilty," the motion stated, "but because he needed to be present for his family, to make sure that any eviction went smoothly, and to ensure the well-being of his children."

---

[8] The judge had not been informed that Mr. Maddux and his family were threatened with eviction when she engaged in the plea colloquy.

[9] The motion attributed no such statement to the magistrate judge.

At a hearing on the motion before the same magistrate judge who accepted the plea, Mr. Maddux's counsel conceded that the judge did not abuse her discretion by deciding to detain Mr. Maddux, but argued that in this "incredibly coercive situation," the judge should have made a more probing inquiry during the plea colloquy to be sure Mr. Maddux's plea was truly voluntary.  Counsel did not argue that the judge improperly had advised or encouraged Mr. Maddux to plead guilty in order to avoid his pretrial detention.

Counsel further argued that Mr. Maddux's claim of innocence was based on a "substantial defense"; he proffered that Mr. Maddux had been diagnosed with obstructive sleep apnea, which (counsel asserted) leads to "excessive sleepiness" and "a tendency to fall asleep at points when someone without it wouldn't."  To explain the vodka bottle on the front passenger seat of Mr. Maddux's car, his counsel proffered that Mr. Maddux was an "unlicensed cab driver" and believed the bottle had been left by one of his customers.  Counsel offered no explanation for Mr. Maddux's reported confusion and disorientation after the accident, his performance on the field sobriety tests, or his refusal to submit to chemical testing for alcohol or drugs.

The judge rejected the argument that the plea colloquy was flawed. She explained that there had been no coercion attributable to the court and she had no reason to doubt Mr. Maddux's sworn responses to her questions. In addition, the judge observed, Mr. Maddux's belated assertion of innocence and proffered defense was an admission that he had lied under oath that did little to rebut the government's evidence of his guilt of DUI. Concluding that the manifest injustice standard had not been met, the judge denied Mr. Maddux's motion to withdraw his plea.

Mr. Maddux filed for review in Superior Court of the magistrate judge's order.[10] He did not claim the magistrate judge had erred by threatening to exercise her discretion to detain him; in fact, he explicitly conceded that the judge "certainly had not abused her discretion in ordering Mr. Maddux held on May 12, 2014." Nor did he argue that the magistrate judge had pressured or advised him to plead guilty or had participated improperly in his plea negotiations. Rather, Mr. Maddux argued only that the plea colloquy was deficient because the judge should have known a more thorough inquiry was necessary under the circumstances to determine whether his plea was voluntary.

---

[10] *See* Super. Ct. Crim. R. 117(g)(1) ("[A] review of the magistrate judge's order or judgment, in whole or in part, shall be made by a judge designated by the Chief Judge upon motion of a party[.]").

Senior Judge Keary, to whom the motion for review was assigned, affirmed the magistrate judge's denial of the motion to withdraw the guilty plea. In holding that the magistrate judge's inquiry into the voluntariness of the plea was appropriate, Judge Keary noted, *inter alia*, that the inquiry had been thorough; that Mr. Maddux had denied having been coerced and had evinced no signs of duress or impairment during the colloquy; and that he had admitted under oath that his consumption of alcohol or drugs had impaired his ability to operate the car he was driving. That Mr. Maddux's decision to plead guilty "may have been influenced by the unappealing alternative of likely detention pre-trial" did not render his plea involuntary, the judge held.

## II.

The procedures and standards pertaining to the entry and withdrawal of guilty pleas are set forth in Criminal Rule 11.[11] The procedures governing the court's colloquy with the defendant and acceptance of a guilty plea are designed to ensure that "any guilty plea represent[s] a voluntary and intelligent choice among the

---

[11] Super. Ct. Crim. R. 11.

alternative courses of action open to the defendant."[12] After a defendant has tendered and the court has accepted a guilty plea, the defendant does not have carte blanche to withdraw it. If the motion to withdraw the plea is filed before the court has imposed sentence, the defendant must show "a fair and just reason" for the court to grant the request.[13] If the motion is filed after the court has sentenced the defendant, however, the test is more demanding; the defendant has the burden of showing that withdrawal of the plea is necessary "to correct manifest injustice."[14] This is the showing Mr. Maddux was required to make to prevail on his motion to withdraw his guilty plea six months after his sentencing. The motion was "addressed to the sound

---

[12] *Byrd v. United States*, 377 A.2d 400, 404 (D.C. 1977); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("The standard [for a valid guilty plea] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."); *German v. United States*, 525 A.2d 596, 602 (D.C. 1987) ("[T]he main purpose underlying Rule 11 is to prevent coerced guilty pleas[.]").

[13] Super. Ct. Crim. R. 11(d)(2); *see, e.g.*, *Gooding v. United States*, 529 A.2d 301, 306 (D.C. 1987).

[14] *Id.* R. 11(d)(3); *see, e.g.*, *Johnson v. United States*, 812 A.2d 234, 240 (D.C. 2002). At the time Mr. Maddux moved to withdraw his plea, the "manifest injustice" standard was set forth in Super. Ct. Crim. R. 32 (e).

discretion of the trial court" and we will reverse its denial "only upon a showing of abuse of such discretion."[15]

"Manifest injustice can take several forms."[16] It may result from "a fatal defect in the Rule 11 proceedings."[17] In the absence of such a defect, the necessary finding may be based on a showing that "justice demands withdrawal in the circumstances of the individual case."[18]

Mr. Maddux's primary claim on appeal falls within the latter category. He asserts that justice demands withdrawal because he was coerced into forgoing a valid claim of legal innocence and pleading guilty. In the proceedings below, Mr. Maddux simply argued that his plea was coerced because he would have been detained had he not pleaded guilty. On appeal, he has expanded and recast his coercion argument.

---

[15] *Gooding*, 529 A.2d at 306; *see also Abbott v. United States*, 871 A.2d 514, 519 (D.C. 2005).

[16] *Johnson*, 812 A.2d at 240.

[17] *Id.*; *see also Gooding*, 529 A.2d at 305 (explaining that the trial court's failure to conduct the required inquiry into the factual basis and voluntariness of the plea "will require the subsequent grant of a . . . withdrawal motion unless it is apparent . . . that any variance was purely technical and affects no substantial right in any way").

[18] *Id.* at 305-06.

He now charges the magistrate judge with "threatening" to "exercise her discretion to detain him" unless "he took her advice to enter a guilty plea."[19] We are inclined to think this revised claim is sufficiently different from the one Mr. Maddux presented in Superior Court as to be deemed forfeited and reviewable only for plain error.[20] We need not decide that question, however, because regardless of how Mr. Maddux's claim of coercion is understood, the record does not support it.

To begin with, the issue, as we have said, is whether Mr. Maddux's plea was a voluntary choice "among the alternative courses of action open to" him. The alternatives open to Mr. Maddux were to stand trial and lawfully remain in pretrial detention or to plead guilty with the hope that he would be released. We do not minimize his predicament (though, as he admits, it was largely of his own making). But that Mr. Maddux chose to plead guilty only so as not to be detained does not mean his choice between those options was coerced. Confronting defendants with such difficult choices between unwelcome but lawful alternatives "is an inevitable –

---

[19] Reply Brief at 2, 4.

[20] *See Comford v. United States*, 947 A.2d 1181, 1186-88 (D.C. 2008) (explaining that a claim is not properly preserved, and hence "subject to the strictures of plain error review," if it calls for an inquiry materially different from that involved in the arguments presented in the trial court).

and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas."[21] Thus, as the Supreme Court repeatedly has held, a guilty plea is not involuntary merely because the defendant would not have entered it except to avoid the imposition of a severe but lawful penalty.[22] Similarly, Mr. Maddux's guilty plea was not involuntary merely because he would not have entered it except to avoid the inconvenience and hardship of being (lawfully) detained prior to trial. "That the [detention order] caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act."[23]

In *Brady*, the Supreme Court endorsed the following succinct standard for the voluntariness of guilty pleas:

---

[21] *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)) (internal quotation marks and brackets omitted).

[22] *See, e.g.*, *id.* at 363 ("[T]he plea may have been induced by . . . fear of the possibility of a greater penalty upon conviction after a trial."); *Alford*, 400 U.S. at 31 ("That [the defendant] would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage."); *Brady v. United States*, 397 U.S. 742, 755 (1970) ("[A] plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.").

[23] *Brady*, 397 U.S. at 750.

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).[24]

By this standard, Mr. Maddux's plea of guilty was not coerced and "must stand." In arguing otherwise, Mr. Maddux cites (for the first time on appeal) two pronouncements made by the magistrate judge: (1) the judge's statement that, if he tested positive for PCP, she likely would detain him until "the trial date . . . or until the case is resolved one way or the other"; and (2) the judge's comment to his lawyer, in response to Mr. Maddux's expressed need to be home with his children, that defense counsel "obviously" was "free to talk to [the government] about whether there's any kind of offer on the table that might, if [the drug test] is positive, allow [Mr. Maddux] some ability to return to his family." We do not agree that these comments were coercive; nor do we agree with Mr. Maddux's alternative argument

---

[24] *Id.* at 755 (internal punctuation and citation omitted).

that the second comment, even if not coercive, violated the prohibition in Rule 11 on judicial participation in plea negotiations.[25]

The first comment was not equivalent to a threat to detain Mr. Maddux unless he pleaded guilty. It was simply a warning that if Mr. Maddux tested positive for PCP, the judge would detain him until the case ended (regardless of whether he pleaded guilty) in order to make certain he would show up for court proceedings as required and to ensure the safety of the community. Given that Mr. Maddux had failed to report for required drug tests and had tested positive for PCP when he did report, and that Mr. Maddux had missed one court appearance and had not arrived on time for his trial, there was nothing improper about this warning.

The second comment reminded Mr. Maddux and his lawyer that they were not precluded from discussing a plea agreement with the prosecutor under which Mr. Maddux might be allowed to return to his family despite a positive drug test. The reminder may have been unnecessary (as the judge said, it was obvious) but, for the

---

[25] *See* Super. Ct. Crim. R. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions."). At the time of Mr. Maddux's plea, the substantially equivalent prohibition on judicial involvement in plea negotiations was contained in subsection (e)(1) of Rule 11.

following reasons, we conclude that it was neither coercive nor inappropriate.[26] First, the judge did not "threaten" to "exercise her discretion to detain" Mr. Maddux unless "he took her advice to enter a guilty plea." As we have said, the judge detained Mr. Maddux for other, valid reasons, and she never advised him to plead guilty. In fact, the judge made clear that she would be open to allowing Mr. Maddux to go home if he tested negative for PCP, without any guilty plea.[27]

Second, we have held that a judge violates Rule 11 and acts coercively when the judge goes beyond a merely neutral inquiry and encourages a defendant to accept a guilty plea or suggests that the defendant's sentence will be more lenient or harsh depending on whether the defendant pleads guilty or declines to enter a plea. In *Leander v. United States*, for example, the trial suggested that the defendant "could expect leniency at sentencing" if he pleaded guilty because the judge "gives a lot of credit for acceptance of responsibility."[28] We recognized that a defendant "could

---

[26] *Cf. Leander v. United States*, 65 A.3d 672, 677 (D.C. 2013) ("[I]t is not inappropriate for a judge merely to inquire in a neutral manner before trial whether the defendant and defense counsel have had the opportunity to discuss the matter of a plea with government counsel, and to allow the parties time to do that.").

[27] And once his drug test came back positive, the judge promptly attempted to set a trial date without even mentioning the alternative of a guilty plea.

[28] *Leander*, 65 A.3d at 676.

well have taken the judge's comments as coercive and have been concerned about the judge's impartiality in the event he chose to go to trial."[29] In *Boyd v. United States*, we similarly held that the judge violated Rule 11 and coerced the defendant into pleading guilty by indicating he would receive consecutive, rather than concurrent, sentences if he was convicted after trial; "concurrent," the judge remarked, "is a word I rarely use after a trial."[30] The judge's comment in the present case was not comparable to those at issue in such cases or any other case that has been cited to us. The judge did not offer to release (or otherwise reward) Mr. Maddux in exchange for a guilty plea or imply she would penalize him for going to trial. She did not communicate, "either directly or indirectly, . . . that a plea agreement should be accepted or that a guilty plea should be entered."[31] Indeed, the judge's comment gave no assurance that she would accept whatever deal Mr. Maddux and the prosecutor might reach. And the judge did not involve herself in the plea discussions, propose acceptable terms of a deal, or otherwise attempt to influence the negotiations or Mr. Maddox's evaluation of a plea bargain.

---

[29] *Id.*

[30] 703 A.2d 818, 820 (D.C. 1997); *see also Byrd v. United States*, 377 A.2d 400, 402-05 (D.C. 1977) (plea was involuntary where judge stated to defendant, among other comments, "if there is any man that the Court would consider giving life to, it is you", *id.* at 403).

[31] *Leander*, 65 A.3d at 676 (internal quotation marks and citation omitted).

Third, the record strongly indicates that Mr. Maddux did not think the judge had pressured him to plead guilty. When Mr. Maddux agreed to tender his plea, he voiced no such complaint. And during the plea colloquy, Mr. Maddux said he had no questions about pleading guilty and was sure he wanted to do so; he was not reluctant to acknowledge the correctness of the government's evidentiary proffer and admit his guilt; and he affirmed that he had not been forced or threatened to plead guilty. We view such sworn statements from a defendant at his plea hearing with a "strong presumption of verity."[32] Mr. Maddux has not presented compelling evidence to cause us to question their accuracy.

Fourth, it is telling that Mr. Maddux waited as long as he did to complain that his guilty plea was involuntary, and – even more tellingly – that throughout all the proceedings in Superior Court on his motion to withdraw his guilty plea, Mr. Maddux still did not claim that the magistrate judge's comments were coercive. Had he actually perceived them to be coercive, he surely would have said so.

---

[32] *McClurkin v. United States*, 472 A.2d 1348, 1361 (D.C. 1984) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)) (internal quotation marks omitted).

For the foregoing reasons, we conclude that Mr. Maddux did not establish either that his guilty plea was involuntary or that the magistrate judge violated Rule 11 by involving herself with the plea negotiations or his consideration of a plea.

We also see no abuse of discretion in the judge's finding that Mr. Maddux's assertion of legal innocence based on a sleep apnea defense provided no support to his manifest injustice claim. As the judge noted, by denying that he was intoxicated when he crashed his car, Mr. Maddux was admitting he had perjured himself during the plea colloquy. We agree with the District of Columbia Circuit that, absent a "compelling explanation," "[l]ying to a court is not a 'fair and just reason' . . . for allowing a plea to be withdrawn,"[33] let alone a basis for finding manifest injustice in allowing the plea to stand.

Moreover, "[a]lthough a claim of innocence is an important factor in the court's determination of whether it will allow a defendant to withdraw a guilty plea, this claim is not dispositive."[34] The claim must be a "credible" one, and "withdrawal

---

[33] *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006) (internal citations omitted).

[34] *White v. United States*, 863 A.2d 839, 842 (D.C. 2004) (internal quotation marks omitted).

will not be permitted where the defense, even if legally cognizable, is 'unsupported by any other evidence.'"[35]  Furthermore, "[i]n deciding whether a credible claim of innocence has been made, such an assertion is to be weighed against 'the proffer made by the government, [the defendant's] sworn adoption of the facts contained in that proffer, and [the defendant's] own sworn admissions made at the time the pleas were entered.'"[36]  "The judge is permitted to compare the two conflicting versions of events, and to credit one over the other"; on appeal this court will "defer to the trial judge's assessment."[37]

Mr. Maddux's claim of innocence was quite weak and does not stand up well in a comparison with the government's proffer.  Attributing the accident to fatigue caused by sleep apnea was unconvincing for a number of reasons, even setting aside the empty vodka bottle found in the car.  Notably, the sleep apnea defense (which was not supported by a proffer of expert testimony) failed to explain Mr. Maddux's confused and disoriented mental state after the accident, the multiple signs of impairment he displayed during the field sobriety tests, and his refusal to submit to

[35]  *Id.* (quoting *Bennett v. United States*, 726 A.2d 156, 167 (D.C. 1999)).

[36]  *Id.* (quoting *Maske v. United States*, 785 A.2d 687, 695 (D.C. 2001)).

[37]  *Id.*; *see also Bennett*, 726 A.2d at 167-68.

chemical tests for alcohol or drugs in his system. The magistrate judge did not err or abuse her discretion in discrediting the defense and finding it insufficient to cast serious doubt on Mr. Maddux's admission of guilt at the plea hearing.

It remains for us to consider Mr. Maddux's argument that there was a fatal defect in the Rule 11 inquiry, in that the judge did not inquire sufficiently to ensure that his plea was truly voluntary. The argument lacks merit. Rule 11(b)(2) provides that before accepting a plea of guilty, "the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." The judge fulfilled this obligation. Her inquiry was by no means superficial or rushed. In addition to asking Mr. Maddux specifically whether anyone had induced him to plead guilty by force, threats, or promises beside those in the plea agreement, which he clearly and unambiguously denied under oath, the judge probed whether he was certain he wanted to plead guilty, whether he had any questions or concerns, whether he was clear of mind and not under the influence of any drugs, whether he had adequately consulted with his attorney, whether he needed more time, whether he clearly understood the rights he was relinquishing and the terms of his plea agreement, and whether he agreed with the prosecutor's proffer and admitted his guilt. Mr. Maddux's answers to these questions assured her that he was tendering

his guilty plea of his own free will; nothing in his responses indicated a need to question him further about that.

Nonetheless, Mr. Maddux contends the judge should have inquired specifically whether his sole reason for pleading guilty was to avoid being detained. Although Rule 11 does not require that such a question be asked, Mr. Maddux argues that his abrupt decision to change his plea from not guilty to guilty when faced with pretrial detention raised a serious question of voluntariness that necessitated a "more searching inquiry on the aspect of voluntariness prior to acceptance of the guilty plea[]."[38] But that is not so; as we have explained, Mr. Maddux simply had a hard choice to make between two unpalatable but lawful alternatives, pleading guilty and being detained – and he made it. The kind of pressure created by his lawful detention that evidently motivated him to choose to plead guilty is inherent in plea bargaining and far from atypical; it does not constitute coercion that renders a plea involuntary. Consequently, the fact that Mr. Maddux changed his mind and was willing to plead guilty when faced with pretrial detention did not raise a serious question of voluntariness and did not trigger a duty on the part of the judge to conduct further inquiry. And as we have held, Mr. Maddux has not shown that the judge's particular

---

[38] *United States v. Truglio*, 493 F.2d 574, 579 (4th Cir. 1974).

comments or any other influence coerced him to plead guilty. Accordingly, there was no fatal defect in the Rule 11 inquiry here. The plea colloquy was sufficient.

In sum, Mr. Maddux has not established that withdrawal of his plea should be permitted to correct manifest injustice. The magistrate judge did not abuse her discretion in denying his motion. We affirm.

*So ordered.*