**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| JB AND MARGARET BLAUGRUND FOUNDATION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 2021-1094-NAC |
| | ) |
| GUGGENHEIM FUNDS INVESTMENT ADVISORS, LLC, TORTOISE CAPITAL ADVISORS, L.L.C., RANDALL C. BARNES, ANGELA BROCK-KYLE, DONALD A. CHUBB, JR., JERRY B. FARLEY, ROMAN FRIEDRICH III, THOMAS F. LYDON, JR., RONALD A. NYBERG, SANDRA G. SPONEM, RONALD E. TOUPIN, JR., and AMY J. LEE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| FIDUCIARY/CLAYMORE ENERGY INFRASTRUCTURE FUND, | ) ) ) |
| | ) |
| Nominal Defendant. | ) |

**ORDER DENYING APPLICATION FOR
CERTIFICATION OF INTERLOCUTORY APPEAL**

WHEREAS:

1.      Plaintiff is a former stockholder of the Fund.[1]  The Amended Complaint alleges unusual facts.  According to the Amended Complaint and the public and Section 220 documents incorporated into and integral to it:

- The Fund's governance structure did not include exculpation for breaches of the fiduciary duty of care;

- The Trustee Defendants managed at least 150 entities, including the Fund;

- A Trustee Defendant testified that the Trustee Defendants barely reviewed the Fund's financial performance before meeting to discuss the Fund;

- The Trustee Defendants did not oversee Guggenheim's investment strategies;

- Guggenheim increased the Fund's leverage to a point that surpassed the leverage maintained by nearly all the Fund's peers;

- The Moving Defendants had no internal controls to stress test the Fund's portfolio or reduce the Fund's exposure to a liquidity crisis;

- Guggenheim responded to a liquidity crisis by selling $45 million of the Fund's equity securities, which reversed all the Fund's historical returns;

- The Trustee Defendants were not aware of Guggenheim's securities sales;

- After recommending that the Fund be liquidated and wound-up by a trustee (the "Liquidation"), Guggenheim discovered that the securities sales caused recognition of millions of dollars in tax recapture gains;

- The Moving Defendants understood that the Liquidation, although economically advantageous for stockholders, would preserve breach of fiduciary duty claims for litigation by a liquidating trustee, including claims based on Guggenheim's tax error;

- The Moving Defendants opted instead for the Merger, at least in part, to eliminate their personal liability;

---

[1] Unless specified otherwise, capitalized terms have the meaning given them in my February 22, 2023 oral ruling on Defendants' motions to dismiss (the "Ruling").

2

- To achieve the Merger, the Moving Defendants valued Plaintiff's then-pending derivative claims at $0, despite contrary valuations from advisors, and selected a buyer who agreed to indemnify the Moving Defendants fully for all fiduciary liability;

- Along with the Proxy Statement, the Moving Defendants publicized a redacted version of the Amended Complaint that concealed portions of 119 paragraphs detailing their conceivably self-interested motivations for pursuing the Merger, which were gleaned from Section 220 documents;

- The redactions seemingly caused Plaintiff's claims to appear unfounded;

- The Moving Defendants presented the Liquidation structure to stockholders as an option that would lead to uncertain returns, indefinite illiquidity, and incalculable tax expenses at the stockholder level;

- Ten days before the Merger vote, the Moving Defendants issued Supplemental Disclosures indicating to stockholders that the Moving Defendants would pursue the Liquidation if the Merger were rejected;

- To maintain the redactions to the Amended Complaint through the Merger vote, the Moving Defendants moved under Rule 5.1 for continued confidential treatment a few days before the Merger vote;

- After the vote, and despite their Rule 5.1 arguments, the Moving Defendants then unredacted all but three allegations; and

- One of those three allegations referenced an analysis by the Board's financial advisor that calculated sizeable damages caused by Guggenheim's tax error.

2.      The Moving Defendants moved under Rule 12(b)(6) to dismiss Count VI of the Amended Complaint (the "Motion"). Count VI is styled under this Court's *In re Primedia, Inc.*[2] and *In re Riverstone National, Inc. Stockholder Litigation*[3] decisions and challenges the fairness of the Merger process and price.

---

[2] 67 A.3d 455 (Del. Ch. 2013).

[3] 2016 WL 4045411 (Del. Ch. July 28, 2016).

3.      The Motion relied heavily on *Corwin*.  Plaintiff countered that, as a doctrinal matter, *Corwin* does not apply to "*Primedia/Riverstone*" claims.  Plaintiff alternatively argued that *Corwin* cleansing would be unavailable on these facts because the Merger vote was "structurally coerced" and not fully informed.

4.      Plaintiff presented its doctrinal argument as an open question of law.[4] The Moving Defendants characterized that framing as "perplexing" and insisted that "[n]othing distinguishe[d] the application of *Corwin*" to Count VI.[5]

5.      Consistent with this position, the Moving Defendants never argued that the concept of structural coercion was unsettled.  Instead, they argued that the vote was not structurally coerced because the proxy materials gave stockholders the option to choose between the Merger and "the status quo."[6]  Based on that presentation of the concept, the Moving Defendants depicted the proxy materials as offering "a simple up or down vote" based on full information about the economic differences between the Merger and the Liquidation.[7]  Plaintiff, by contrast, argued the proxy materials forced the stockholders to make an "all or nothing" choice.[8]

---

[4] Dkt. 120 at 36–37 (Pl.'s Opp'n Br. to Defs.' Mot. to Dismiss) ("Opp'n Br.")

[5] Dkt. 122 at 21 (Defs.' Reply Br. in Supp. of Mot. to Dismiss) ("Reply").

[6] Reply at 16–18; Dkt. 133 64:1–5 (Tr. of Hr'g on Defs.' Mots. to Dismiss) ("Hr'g Tr."). *See also* Ruling at 27–29 (discussing this argument).

[7] Dkt. 114 at 25 (Defs.' Opening Br. in Supp. of Mot. to Dismiss) ("Opening Br."); Hr'g Tr. at 54:17–19.

[8] Opp'n Br. at 38.  *See also* Hr'g Tr. at 49:23–50:1 ([Pl.'s Couns.]: "Contrary to what [the Moving Defendants] argue in their brief, the status quo isn't a real alternative here.").

4

6.     I denied the Motion (the "Ruling").[9]  The Ruling assumed, without deciding, that *Corwin* applied to Count VI.  In other words, the Ruling accepted (for analytical purposes) the Moving Defendant's articulation of *Corwin*.  The Ruling then concluded that the unusual facts of this case supported a reasonable inference of structural coercion.[10]  In reaching that conclusion, the Ruling applied traditional coercion principles.  Those principles were cited in the parties' cases.

7.     The Moving Defendants have applied for certification of an interlocutory appeal (the "Application").  The Application seeks review of the Ruling's pleading-stage coercion conclusion.  Plaintiff opposes the Application.[11]

8.     The Application does not argue that the Ruling misconstrued the record.  Nor does the Application accuse the Ruling of applying the incorrect standard.  And the Application does not identify a case that examined the same or similarly unusual facts.  Nevertheless, the Application contends that the Ruling resolved a novel question of law and conflicts with precedent.

---

[9] *See* Dkt. 136 (Tr. of Oral Ruling Resolving Defs.' Mots. to Dismiss) ("Ruling").  The Ruling separately granted motions to dismiss filed by Tortoise and the Former Trustees. The grounds for granting those motions are not relevant to this decision.

[10] *Id.* at 17–31.  The parties did not present argument on the concept of "situational coercion," even though the Moving Defendants cited the leading case.  *See* Opening Br. at 25 n.79 (citing *In re Saba Software, Inc. S'holder Litig.*, 2017 WL 1201108 (Del. Ch. Mar. 31, 2017)); *see also* Dkt. 139 at 13 n.39 (Moving Defs.' Appl. for Certification of Interlocutory Appeal) ("Appl.") (citing *Saba Software* again).  Although not before me, it would not seem unfounded for a reviewing court to conclude that this case's unusual facts also lend themselves to a pleading-stage determination of situational coercion.

[11] Dkt. 149.

NOW, THEREFORE, the Court, having carefully considered the Application and the parties' arguments, IT IS HEREBY ORDERED, this 17th day of March 2023, as follows:

1. Supreme Court Rule 42 governs certification of interlocutory appeals. "The purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[12] As a result, Rule 42 "is not an appropriate vehicle for re-litigating unsuccessful arguments preserved for direct appeal."[13] "Otherwise, interlocutory review would be appropriate in every case in which a losing party contends the Court committed legal error."[14]

2. Interlocutory appeals are "generally not favored."[15] They "disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[16] So a Rule 42 application cannot be certified unless it clears two "rigorous" hurdles.[17] First, the order must have "decide[d] a substantial issue

---

[12] *In re Del. Pub. Schs. Litig.*, 2022 WL 1220075, at *9 (Del. Ch. Apr. 26, 2022) (alteration and internal quotation marks omitted), *appeal refused*, 277 A.3d 296 (Del. 2022) (TABLE).

[13] *Elutions Cap. Ventures v. Betts*, 2022 WL 17075692, at *3 (Del. Ch. Nov. 18, 2022) (cleaned up), *appeal refused*, 2023 WL 164300 (Del. Jan. 12, 2023) (TABLE).

[14] *Legion P'rs Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2020 WL 6875211, at *3 (Del. Super. Nov. 23, 2020), *appeal refused*, 242 A.3d 601 (Del. 2020) (TABLE).

[15] Supr. Ct. R. 42 cmt.

[16] Supr. Ct. R. 42(b)(ii).

[17] *TowerHill Wealth Mgmt., LLC v. Bander Fam. P'ship, L.P.*, 2008 WL 4615865, at *2 (Del. Ch. Oct. 9, 2008), *appeal refused*, 962 A.2d 256 (Del. 2008) (TABLE).

of material importance that merits appellate review before a final judgment."[18] Second, there must be "substantial benefits" to granting the application that "will outweigh the certain costs that accompany an interlocutory appeal."[19]

**The Substantial Issue Requirement**

3. "The 'substantial issue' requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case . . . ."[20] The substantial issue requirement is not met where "no final determination was . . . made on the merits of plaintiff's claims, but only that plaintiff would be afforded the right to pursue discovery related to the allegations of the complaint."[21] Consistent with this paradigm, this Court has reasoned that an order denying a motion to dismiss a stockholder claim generally does not raise a substantial issue.[22]

---

[18] Supr. Ct. R. 42(b)(i).

[19] Supr. Ct. R. 42(b)(ii).

[20] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008), *appeal refused*, 956 A.2d 31 (Del. 2008) (TABLE).

[21] *Fuqua Indus. v. Lewis*, 1986 WL 16292, at *1 (Del. Jan. 24, 1986) (ORDER).

[22] *See, e.g.*, *Fannin v. UMTH Land Dev., L.P.*, 2020 WL 5198356, at *2 (Del. Ch. Aug. 28, 2020) (determining that the order did not decide a substantial issue of material importance because the order "merely decided, applying the liberal standard of [] Rule 12(b)(6), that the [c]omplaint stated a claim against the Appealing Defendants for breach of fiduciary duty"), *appeal refused sub nom. Etter v. Fannin*, 238 A.3d 193 (Del. 2020) (TABLE); *In re Tesla Motors, Inc. S'holder Litig.*, C.A. No. 12711, at 6–8 (Del. Ch. Apr. 27, 2018) (Dkt. 137) (determining that the order did not decide a substantial issue of material importance where the plaintiff met its "minimal pleading-stage burden" to demonstrate controlling stockholder status and discovery could show otherwise), *appeal refused sub nom. Musk v. Ark. Tchr. Ret. Sys.*, 184 A.3d 1292 (Del. 2018) (TABLE); 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04(d), at 18-12 (2d ed. & Sept. 2021 Supp.) ("[R]ulings found not to have

4. The Ruling denied a motion to dismiss. In doing so, the Ruling was required to accept Plaintiff's unusual, but well-pleaded, allegations as true. The Ruling was not permitted to draw defendant-friendly inferences from the allegations or the Proxy Statement or Section 220 materials incorporated into the Amended Complaint. Under these constraints, the Ruling concluded that the stockholder vote failed to cleanse the Merger. [23] It did not adjudicate the merits of Count VI.

5. The Ruling emphasized that its pleading-stage coercion determination was not a finding that the Moving Defendants breached their fiduciary duties. Instead, the Ruling further emphasized that discovery may reveal that the Moving Defendants "were simply presenting the objective realities" of the Merger and the Liquidation.[24] For now, I would deny the Application on the substantial issue requirement alone.

---

determined a substantial issue include . . . the denial of a [] motion to dismiss a derivative suit in response to the recommendation of a special litigation committee . . . ." (citation omitted)). *Cf. SDF Funding LLC v. Fry*, 2022 WL 2165922, at *2 (Del. Ch. June 16, 2022) (interpreting Rule 42(b)(iii)(A) to focus on the novelty of the issue decided, not the nature of the argument rejected), *appeal refused*, 279 A.3d 829 (Del. 2022) (TABLE).

[23] Interlocutory review is not warranted merely because the Court has made a pleading-stage determination on the appropriate standard of review. *See, e.g.*, *MS Pawn Corp. v. Treppel*, 133 A.3d 560 (Del. 2016) (TABLE) (refusing interlocutory review where this Court determined on a motion to dismiss that entire fairness might govern challenged transaction, even though there was an "arguable conflict" on that point); *Reading Co. v. Trailer Train Co.*, 1984 WL 21202, at *1 (Del. Ch. June 7, 1984) (denying certification where order determined that business judgment rule applied at pleading stage, but did not "foreclose[]"plaintiff from attempting to establish entire fairness "at a later stage").

[24] Ruling at 30–31.

6. The Application does not meaningfully resist this result. The Application claims that the Ruling "determined substantial issues of material importance in the matter at hand[.]"[25] But it says nothing more. Failure to explain why the Ruling should be certified is at least one good reason to deny certification.

7. The Application otherwise suggests that *Corwin* cases are different. They are not.[26] Neither are structural coercion cases.[27]

8. Rather than decide a substantial issue, the Application asserts that the Ruling "presents [a] substantial question[.]"[28] That question, according to the Application, is whether

> stockholders of a Delaware corporation with no controller [are] structurally coerced into voting for a merger when the corporation's Board provides full disclosures to stockholders about the company's potential alternatives and recommends that stockholders approve the merger because the Board considers the merger to be preferable to what it views as the most viable alternative—a liquidation.[29]

---

[25] Appl. at 1–2.

[26] *See, e.g.*, *Tesla Motors*, C.A. No. 12711, *appeal refused sub nom. Musk*, 184 A.3d 1292. *See also Levinson v. Conlon*, 385 A.2d 717, 720 (Del. 1978) ("[T]he Court determined that an affirmative defense was not available, and the consequence of the decision was that the parties must proceed to trial, a ruling which our cases have held is not [a] basis for an interlocutory appeal.").

[27] *See, e.g.*, *In re Pure Res., Inc. S'holders Litig.*, 2002 WL 31357847, at *2 (Del. Ch. Oct. 9, 2002) (Strine, V.C.) (determining that the order did not decide a substantial issue of material importance because its decision to preliminarily enjoin a structurally coercive tender offer did not establish a legal right, but merely prevented the offer to close before the case was resolved on the merits), *appeal refused*, 812 A.2d 244 (Del. 2002) (TABLE).

[28] Appl. at 2.

[29] *Id.*

Curating the question-presented this way may rhetorically advance the Moving Defendants' certification factors, all of which I consider—and reject—below. But the reality is, the Ruling did not answer the Application's question. The Ruling considered whether it was reasonably conceivable that *these* stockholders were structurally coerced into approving *this* merger given *this* Board's presentation of *this* liquidation as the *only* viable alternative.[30] The Moving Defendants' failure to recognize the fact-sensitive nature of the Ruling dooms the rest of the Application.

**The Multi-Factor Balancing**

9. The Ruling did not address a substantial issue of material importance. Even if it did, that would not necessarily mean that the Ruling "merits appellate review before a final judgment."[31] If the substantial issue requirement is met, the Court next must consider whether the benefits of interlocutory review would outweigh its costs. Rule 42(b)(iii) specifies eight factors to guide this assessment.[32]

---

[30] *See Northrop Grumman Innovation Sys. v. Zurich Am. Ins. Co.*, 2021 WL 772312, at *2 (Del. Super. Mar. 1, 2021) (The trial court may reject and reframe the question presented for certification "especially where, as here, the ask in the application is imprecise." (citing *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 394 (Del. 2013))), *appeal refused sub nom. Nat'l Union Fire Ins. Co. v. Northrop Grumman Innovation Sys.*, 248 A.3d 922 (Del. 2021) (TABLE).

[31] Supr. Ct. R. 42(b)(i).

[32] *See* Supr. Ct. R. 42(b)(iii)(A)–(H).

10.     The Application contends that four factors support certification.[33] None does.

11.     The Moving Defendants first invoke Rule 42(b)(iii)(A). This factor considers whether the Ruling resolved a novel question of law for the first time in Delaware. It did not. In fact, the Ruling *declined* to resolve a purportedly novel issue. The Ruling instead applied settled coercion precedent to an unusual set of facts. "The mere application of long-held precedent to new facts does not make an order worthy of interlocutory appeal."[34] Accordingly, Rule 42(b)(iii)(A) does not support certification.

12.     To portray the Ruling as novel, the Application asserts that the Ruling "is the first that denies *Corwin* cleansing when stockholders are asked to vote on a proposed merger, and are fully advised of the alternatives[.]"[35] That is inaccurate. The Ruling concluded that coercion precluded cleansing. So it did not need to not consider whether the stockholders were fully informed or "advised."

13.     Moreover, the coercion analysis, as framed by the parties, hinged on whether the stockholders chose the Merger on its economic merits. That framework

---

[33] By selecting only four of eight factors, Defendants concede that the remaining four do not support certification. *See, e.g.*, *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *2 (Del. Ch. Oct. 3, 2022), *appeal refused sub nom. Garcia v. Franchi*, 285 A.3d 1205 (Del. 2022) (TABLE). So I do not discuss those.

[34] *Elutions*, 2022 WL 17075692, at *5 (alteration and internal quotation marks omitted).

[35] Appl. at 3.

implicated well-settled structural coercion precedent. The Ruling is not the only post-*Corwin* decision to visit that precedent. Nor is it the first. The parties' central case applied that precedent too.[36]

14. The Application's novelty theory is surprising. Throughout the case, the Moving Defendants maintained that Count VI involved a straightforward application of *Corwin*. Counsel stressed this point during oral argument:

> I don't think we have to get anywhere near the philosophical question of could there possibly be a derivative claim that wouldn't be subject to *Corwin*. [Count VI] is right down the fairway in terms of the types of claims that would fit under *Corwin*.[37]

15. Properly contextualized, the Application contains nothing "new" except for its arguments. Recall, for example, that the Moving Defendants insisted structural coercion does not exist where stockholders may freely choose between a change of ownership and "the status quo." Given that formulation, the Ruling was required to examine whether the status quo was offered as an option. As explained in the Ruling, the proxy materials disclosed that the Fund either would be liquidated or sold. It would not have a status quo. Because the Moving Defendants themselves tied structural coercion to the availability of a status quo, their own arguments precluded cleansing here. Faced with that result, they have changed their tune.

---

[36] *See Sciabacucchi v. Liberty Broadband Corp.*, 2017 WL 2352152, at *20–24 (Del. Ch. May 31, 2017); *see also* Ruling at 27–30 (discussing *Liberty Broadband*).

[37] Hr'g Tr. at 10:7–12 (Arg. of Moving Defs.' Couns.).

16.     Now, the Application puts the Ruling "beyond current Delaware law," claiming it "eliminates a *Corwin* defense even when . . . the status quo was not a realistic choice[.]"[38]  The Application thus decouples coercion and the status quo to raise an argument that was not presented previously and to fault the Ruling for resolving the one that was.[39]  Even so, this new argument does not support certification.  Arguments presented for the first time on appeal are deemed waived.[40]

17.     Shorn of the word "novel," the Application reduces to a disagreement with the Ruling's reasoning.  That is not a basis for interlocutory review.

18.     The Moving Defendants next invoke Rule 42(b)(iii)(B).  This factor considers whether the Ruling conflicts with other trial court decisions "upon [a] question of law."  "Generally, for court decisions to be 'conflicting upon a question of law,' they must disagree about legal standards.  Courts will not be found to have made conflicting decisions on a question of law if they merely found factual distinctions that dictated differing outcomes under the same legal standard."[41]

---

[38] Appl. at 7.

[39] The Moving Defendants' shape-shifting approach is a recurring theme.  For example, before the Merger closed, the Moving Defendants took the position that the Merger would not operate to preclude a "direct claim" available under *Primedia*.  Dkt. 12 at 10 (Defs.' Opp'n to Mot. to Expedite).  Then, once the Merger closed, the Moving Defendants argued Count VI was a "purported direct claim" barred under *Corwin*.  Reply at 20.  *See* Ruling at 48:15–24.

[40] Supr. Ct. R. 8.

[41] *Roseton OL, LLC v. Dynegy Hldgs. Inc.*, C.A. No. 6689, at 8 (Del. Ch. Aug. 4, 2011) (alteration omitted), *appeal refused*, 26 A.3d 214 (Del. 2011) (TABLE).

19. The Moving Defendants do not contend that the Ruling applied the wrong legal standard. Nor do they cite a case that applied a different legal standard. Quite the opposite: the Application cites the same cases cited in the Ruling.[42] Given all this, the Application is left to argue that the Ruling should have reached the opposite outcome. Again, this is a mere disagreement with the Ruling's reasoning. Worse, it fails to account for this case's well-pleaded allegations. The Moving Defendants have not cited a coercion case involving the same or similarly strange facts. And those "factual distinctions" are precisely what "dictated a different outcome here."[43] Accordingly, Rule 42(b)(iii)(B) does not support certification.

20. As their third factor, the Moving Defendants invoke Rule 42(b)(iii)(G). This factor considers whether reversal of the Ruling would terminate the litigation. It may, depending on how the Delaware Supreme Court resolves the matter.[44] But

---

[42] *See* Appl. at 9–13 & nn.21–29, 31–38. The Application tries to distinguish *Eisenberg v. Chicago Milwaukee Corp.*, 537 A.2d 1051 (Del. Ch. 1987). Even so, the Ruling did not treat *Eisenberg* as dispositive. The Ruling invoked *Eisenberg* to illustrate the choice faced by stockholders: approve the Merger or, by operation of the Liquidation, lose the power to trade. The Application does not explain why framing the alternative to a merger as imposition of an illiquid trust on stockholders is analytically different here from delisting the company's securities. It just baldly states that *Eisenberg* "is not like" this case. Appl. at 10.

[43] *Brown v. Wilm. Zoning Bd.*, 2007 WL 2122046, at *3 (Del. Super. July 23, 2007), *appeal refused*, 947 A.2d 1120 (Del. 2007) (TABLE); *accord Roseton*, C.A. No. 6689, at 8 n.20.

[44] The Ruling did not reach the question of whether the Merger vote was fully informed. So, unless the Supreme Court addresses that issue *sua sponte*, it is likely that the case would be remanded for me to determine whether *Corwin* cleansing is precluded under the disclosure prong. The Supreme Court also could conceivably remand for me to consider the potentially novel question of the applicability of *Corwin* to *Primedia* claims.

14

even if it would, this factor, standing alone, cannot be enough to obtain interlocutory review of an unsuccessful motion to dismiss. Otherwise, Rule 42(b)(iii)(G) "would validate routine appeals from most motion to dismiss decisions."[45] That type of appellate on-ramp would run contrary to the text and purpose of Rule 42.[46] So even if success on appeal would end the litigation, I still would not certify the Ruling.[47]

21. Finally, the Moving Defendants invoke Rule 42(b)(iii)(H). This factor considers whether interlocutory appeal would serve the public interest. It would not. The Ruling is a fact-laden, pleading-stage analysis that applied settled law to resolve *sui generis* issues unique to these parties. I therefore cannot say with any degree of certainty that immediate review of the Ruling would promote clarity for the larger business and legal communities or advance the common law of coercion.[48] And if the balance of factors is uncertain, I must deny the Application.[49] So that is what I will do. Accordingly, Rule 42(b)(iii)(H) does not support certification.

---

[45] *US Dominion, Inc. v. Fox News Network, LLC*, 2022 WL 100820, at *7 (Del. Super. Jan. 10, 2022), *appeal refused*, 270 A.3d 273 (Del. 2022) (TABLE).

[46] *See* Supr. Ct. R. 42(b)(ii) (instructing that interlocutory appeals should be "exceptional, not routine"); *see also Levinson*, 385 A.2d at 720 (Rule 42 "is intended to minimize two highly undesirable problems . . . the fragmentation of a case and a delay in its final disposition."); *Castaldo v. Pittsburgh-Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973).

[47] *See* Supr. Ct. R. 42 cmt. ("[E]ven if an interlocutory appeal satisfies one or more of the possible criteria set forth in the Rule, the Court may still refuse the appeal.").

[48] *See* Supr. Ct. R. 42 cmt. (explaining that interlocutory review is intended to be "helpful" to practitioners, litigants, and the court, and therefore should be limited to issues that, if clarified, would "truly benefit" these constituents).

[49] *See* Supr. Ct. R. 42(b)(iii) (hanging paragraph).

22. In sum, the Moving Defendants' attempt to bootstrap their disagreement with the Ruling into a basis for interlocutory appeal ignores this case's unusual facts, contradicts their dismissal arguments, and is not supported by a substantial issue or any of the certification factors. Rule 42 instructs that interlocutory appeal "should be exceptional, not routine[.]"[50] The Supreme Court reserves interlocutory review for "extraordinary" cases.[51] This is not one of them. Accordingly, I DENY the Application.

*/s/ Nathan A. Cook*
Vice Chancellor Nathan A. Cook

---

[50] Supr. Ct. R. 42(b)(ii).

[51] *Ryan v. Gifford*, 2008 WL 43699, at *4 (Del. Ch. Jan. 2, 2008) (internal quotation marks omitted).